95 N.J. Super. 82 (1967)
230 A.2d 146
SECRETARY OF STATE, STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
GPAK CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 1967.
Decided May 8, 1967.
*85 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Alan D. Kirby, Deputy Attorney General, argued the cause for appellant (Mr. Arthur J. Sills, Attorney General, attorney).
Mr. William R. Gilson argued the cause for respondent (Messrs. Kentz & Gilson, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The State appeals from a Law Division order setting aside a judgment against defendant GPAK Corporation, docketed pursuant to the provisions of N.J.S.A. 14:6-2. The case is one of first impression.
N.J.S.A. 14:6-2 requires every domestic and every foreign corporation doing business in New Jersey to file a report with the Secretary of State within 30 days after the first election of directors and officers or within 60 days after the date of its incorporation or registering to do business (whichever comes first), and annually thereafter within 30 days after the time appointed for holding the annual election of directors and officers or the anniversary date of filing in the preceding year (whichever comes first). The report must state, among other things, the corporate name, the address of its registered office in this State and the name of the agent upon whom process may be served, the character of its business, the amount of authorized capital stock and the amount actually issued and outstanding, the names and addresses of the directors and officers and when their respective terms expire, and the date of the next annual meeting of stockholders for the election of directors. Upon failure to file such report the corporation, after written demand served upon it by the Secretary of State by certified or registered mail to its last address *86 appearing of record in his office, shall forfeit $200 to the State for each report not filed within the preceding five years. The penalty may be recovered with costs in a civil action prosecuted by the Attorney General. However, the corporation is not subject to the penalty if, within 30 days after service of the written demand, it files the required reports and pays the Secretary of State a $10 filing fee for each.
The statute provides for an additional or alternative remedy:
"* * * [T]he Secretary of State may issue a certificate to the Clerk of the Superior Court that a corporation is indebted for the payment of such penalty, and thereupon the clerk shall immediately enter upon his record of docketed judgments the name of such corporation, and of the State, a designation of the statute under which the penalty is imposed, the amount of the penalty so certified, and the date of making such certification. The making of the entries shall have the same force and effect as the entry of a docketed judgment in the office of such clerk, and the Secretary of State shall have all of the remedies and may take all of the proceedings for the collection thereof which may be had or taken upon the recovery of a judgment in a civil action, but without prejudice to the corporation's right of appeal. * * *"
It appears without contradiction that GPAK was incorporated under Title 14 of the Revised Statutes of New Jersey ("Corporations, General") on July 21, 1961, its principal office being designated as 9 Parmley Place, Summit, with Frederick G. Kentz as registered agent. The 1964 annual report, the only one timely filed, lists Kentz as a director and treasurer of the corporation.
On April 4, 1966 the Secretary of State's office sent Kentz a certified mail letter advising that GPAK had not filed its annual reports for 1961, 1962, 1963 and 1965, and if they were not filed within 30 days pursuant to the statute, the Secretary of State would have a docketed judgment entered against the corporation in the amount of $200 for each report. GPAK did nothing, with the result that on May 9 the Secretary of State sent to the Superior Court Clerk a "judgment" (actually, a certificate) stating that the corporation *87 was indebted to the State for $800. The clerk entered the certificate on his record of docketed judgments on May 11, 1966. On May 19 the clerk, by letter addressed to the corporation c/o Kentz, notified it of the entry of that judgment.
More than a month later, on June 24, Kentz wrote the Superior Court Clerk explaining that the corporation had been inactive for the past few years and that its failure to file the annual reports "was through inadvertence and was not deliberate or with intent to evade the law." He also represented that the corporation was about to be dissolved. (The records of the Secretary of State show there has been no dissolution as of the date of this opinion.) Kentz inquired whether the clerk would be willing to waive the $800 and accept the regular annual payment ($10) for the years reports were not filed, and he enclosed a $40 check payable to the Secretary of State for the four years GPAK was delinquent. The request was denied, with the result that on August 17, 1966 a notice of motion was filed on behalf of the corporation seeking relief from the judgment under R.R. 4:62-2 "because of excusable negligence or mistake." By way of supporting affidavit Kentz stated that the corporation had been inactive for several years, that his firm had been retained in April 1966 to take such steps as were necessary to dissolve it, and that in the course of doing so he discovered the docketed judgment. Upon further investigation he found that the Secretary of State's letter of April 4 had been receipted for by a member of his firm's clerical staff. He represented that neither this notice nor the notice of entry of judgment had ever been brought to his attention; they had been received and placed in the file without his knowledge.
After considering this affidavit and hearing oral argument, the county judge temporarily assigned to the Law Division set the judgment aside and ordered the Secretary of State to accept GPAK's past annual reports for filing at $10 each. This appeal followed.
Prior to the amendment effected by L. 1964, c. 264, the statute in question (R.S. 14:6-2, as amended by L. 1953, c. *88 14, § 2 and L. 1963, c. 124, § 1) provided that if a report was not filed the corporation was to forfeit $200 to the State, to be recovered with costs in an action at law prosecuted by the Attorney General. In 1964 the Legislature passed Senate Bill No. 57, further amending the statute by reducing the filing fee for delinquent annual reports from $10 to $1 (the latter being the fee fixed by R.S. 14:16-1, prior to its amendment by L. 1963, c. 124, § 3) and providing for a 30-day grace period during which a corporation receiving notice of its delinquency could file back reports at a fee of $1 each without penalty. In conditionally vetoing the bill the Governor recommended that the filing fee be restored to $10 and that there be a five-year limitation on the filing of back reports. The 30-day grace period was to remain. In addition, he recommended a simplified procedure for collecting penalties for failure to file annual reports. The result was the statute as it now reads, including the summary procedure authorizing the Secretary of State, as an additional or alternative remedy to suing for the penalty, to issue his certificate to the Superior Court Clerk, to be docketed as a judgment against the corporation.
We read the present statute as a legislative mandate, intended to simplify collection procedures in the case of failure to file annual corporate reports after a 30-day notice period. The legislative concern is apparent: were the Secretary of State relegated to only a full-scale civil action to enforce the filing requirements, the law would be of limited effect. Correspondingly, the existence of a summary enforcement procedure would serve as a deterrent to corporations consistently failing to conform with the filing requirements.
Considering the statute only, it makes no provision for a defense where an annual report is not filed on time. It gives the corporation a 30-day period to comply before a civil action is instituted to collect the penalty or the Secretary of State files his certificate with the Superior Court Clerk for docketing as a judgment. Reading the statute in the light of its evident legislative purpose, a corporation was not to escape *89 the penalty provision by alleging excusable neglect or mistake, once the 30-day period had elapsed. Such a construction would be inconsistent with the tightening of the annual report provisions of N.J.S.A. 14:6-2.
However, consideration must be given to the provisions of R.R. 4:62-2, upon which the corporation relied in seeking to nullify the judgment on a claim of excusable neglect. That rule provides, in part,
"On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect: * * * or (f) any other reason justifying relief from the operation of the judgment or order. * * *"
The State argues that the statutory 30-day grace period already constitutes a legislative waiver of the penalty upon certain conditions, and is in no way connected with procedural aspects. The court should not, it says, through its rule-making power qualify the substantive legislative grace period by utilization of a court rule.
The argument so advanced would diminish the significance of the filing of the Secretary of State's certificate with the Superior Court Clerk, who thereupon is directed by the statute in question to enter it immediately upon his records as a docketed judgment. Once docketed, the judgment is equivalent to a judgment entered by a court. The statute does not violate our 1947 Constitution, Art. III, par. 1, which provides that none of the three branches of government shall exercise the powers properly belonging to any of the others. There is no invasion of the province of the judicial branch by the executive. N.Y., Susquehanna & W.R.R. Co. v. Vermeulen, 44 N.J. 491, 503-504 (1965). The court there considered N.J.S.A. 54:29A-57, which provides that
"As an additional or alternative remedy, the State Comptroller may issue a certificate to the Clerk of the Superior Court that a taxpayer is indebted under this or any former act for the taxation *90 of railroads in such an amount as shall be named in such certificate, and thereupon the clerk to whom such certificate shall have been issued shall immediately enter upon his record of docketed judgments the name of such taxpayer, and of the State, the amount of the debt so certified, a short name of the tax, and the date of making such entries. The making of the entries shall have the same force and effect as the entry of a docketed judgment in the office of such clerk, and the State Comptroller shall have all of the remedies and may take all of the proceedings for the collection thereof which may be had or taken upon the recovery of a judgment in a civil action, but without prejudice to the taxpayer's right of appeal."
This language parallels that of N.J.S.A. 14:6-2, here under consideration. The court in Susquehanna said:
"* * * We see no reason to question the Legislature's power to invest a tax assessment [here, penalty] with the characteristics of a judgment and to provide for its collection by the same remedies available for the enforcement of a judgment. Recording the assessment [penalty] among the records of the clerk of a court merely serves governmental convenience. The statute does not purport to clothe executive officials with a final authority to decide challenges to the validity of the assessment [penalty]; such issues are left to the judicial process." (Brackets ours)
So here. The docketed judgment against GPAK should be dealt with as would any other judgment regularly entered by a court of record. Since it was within the Legislature's power to invest the penalty for late filing with the characteristics of a judgment and to provide for its collection by the same remedies as are available for the enforcement of a judgment, the docketed judgment in question was subject to R.R. 4:62-2. The question therefore presents itself whether the trial judge properly exercised judicial discretion in setting the judgment aside because of the alleged excusable neglect or mistake of Kentz.
The corporation's brief makes much of the fact that Kentz was only an attorney and his neglect should not be visited upon it. But the fact is that he was more than just its legal representative: he was its registered agent and one of its directors, as well as an officer. In seeking relief under R.R. 4:62-2, the uncoordinated procedure of the office of *91 the corporation's official and legal representative is not a valid excuse for avoiding a deserved penalty.
The rule in question is intended to provide equitable relief from oppressive and unjust judgments; it is "designed to afford a remedy in the rare situation in which for some equitable reason" a judgment should not be enforced. Cf. Greenberg v. Owens, 31 N.J. 402, 405 (1960).
Faulty office procedures on the part of one who was an officer and director of GPAK, as well as its registered agent and attorney, is hardly an excuse in the circumstances here present. Like a default judgment, a docketed judgment like the one here in question should not be reopened on the mere grounds of inadvertence or neglect; to justify the vacation of such a judgment, there must be proof that the inadvertence or neglect was actually excusable. Cf. Ballurio v. Campanaro, 30 N.J. Super. 548, 551-552 (App. Div. 1954).
Although a motion under R.R. 4:62-2 is addressed to the sound discretion of the trial judge, guided by equitable principles, deference should be paid to the obvious legislative purpose evidenced by N.J.S.A. 14:6-2 to implement and put teeth into the administrative practices of the Secretary of State's office in regulating the filing of annual reports by corporations.
Additionally, we must consider the fact that Kentz responded to the Secretary of State's IBM annual report card notices in only one of the years 1961 through 1965. The notices for 1961, 1962, 1963 and 1965 were ignored. Also ignored was the Secretary of State's routine letter of May 17, 1965 calling attention to the fact that the corporation had failed to file certain back annual reports. Enclosed with that letter was a back annual report form to be filled out. And then there was the letter of April 4, 1966, already referred to. We therefore have a continuous history of noncompliance, with the exception of the year 1964  four notices (one each year) calling for individual reports and two notices for cumulative back annual reports. In view *92 of this persistent failure to respond, the corporation's attitude can only be considered one of indifference or inexcusable neglect. The State notes that significantly, during the period 1961 through 1965, GPAK continued to pay its annual corporate franchise taxes.
The order under appeal is reversed and the docketed judgment of $800 against GPAK Corporation reinstated.