WILLIAM J. LAWRENCE, PLAINTIFF, v. JOSEPH E. MATUSEWSKI, ET AL, DEFENDANTS.

JOSEPH E. MATUSEWSKI, PLAINTIFF, v. NANCY LIVIGNE, ET AL, DEFENDANTS.

Superior Court of New Jersey
Law Division Monmouth County

Decided February 25, 1986.

*Michael A. Cohan* for plaintiff William J. Lawrence.

*Douglas B. Hanna* for defendant Nancy Livigne (*Clark, Gertler & Hanna,* attorneys).

*Petro R. Stawnychy* for plaintiff Joseph E. Matusewski (*Pincus, Gordon & Zuckerman,* attorneys).

MILBERG, A.J.S.C.

These consolidated negligence actions arose out of an automobile accident which occurred on June 3, 1983. Plaintiffs' claims were subject to mandatory arbitration under the provisions of *N.J.S.A.* 39:6A–24 *et seq.,* as implemented by the statewide rules governing automobile arbitration.[1] Following

---

[1] At the time these claims were arbitrated, the arbitration rules had yet to be incorporated in the *Rules Governing the Courts of the State of New Jersey.* Pursuant to the most recent rule amendments, which became effective January

the arbitration hearing on December 13, 1985, the arbitrator returned an award in favor of plaintiff William J. Lawrence in the amount of $30,000 plus $6,300 in prejudgment interest, and an award in favor of plaintiff Joseph E. Matusewski in the sum of $100,000 plus $20,000 in prejudgment interest. The arbitrator also rendered an award relative to the liability as between Matusewski and defendant Nancy A. Livigne, assessing 90% of the liability to Livigne and 10% of the liability to Matusewski.

None of the parties rejected the arbitrator's decision and demanded a trial *de novo* within 30 days of the award in accordance with *R.* 4:21A–6(b)(1). Pursuant to *R.* 4:21A–6(b)(2), plaintiffs Matusewski and Lawrence have made timely motions for confirmation of the award and entry of judgment thereon.

On February 6, 1986 defendant Livigne filed opposition to the confirmation motions and cross-moved for an order granting a trial *de novo, nunc pro tunc.*[2] Livigne states that there was a "breakdown in communication" between her counsel and the claims adjuster for her insurance carrier, Allstate Insurance Company.

Allstate's claims adjuster, Edward Williams, received from Douglas Hanna, Livigne's attorney, a letter dated December 17, 1985, apprising him of the arbitrator's award and requesting instructions as to whether his office should demand a trial *de novo.* Following receipt of a copy of the award from Hanna on December 20, 1985, Williams decided to reject it and move for a trial *de novo.* The ensuing events are described by Williams in his certification in support of the cross-motion:

> To the best of my recollection and belief, I called Mr. Hanna's office and left a message with Mr. Hanna or his secretary in early January and instructed him to file a notice of motion for trial *de novo.* I assumed this would be done and

---

2, 1986, the arbitration rules are now embodied in *R.* 4:21A–1 through –8. *R.* 4:21A and its subparts govern the instant motions; citations thereto will be made accordingly.

[2]This filing was over 50 days after the filing of the award—even beyond the time for moving to confirm. *See R.* 4:21A–6(b)(2).

gave the matter no further thought until Mr. Hanna wrote me on January 28, 1986, and advised me of the motion by Plaintiff to enter judgment on the Arbitrator's award.

This was my first notice that the trial *de novo* had not been filed pursuant to my phone call.

Mr. Hanna advised me that he did not recall getting a message to file a motion for a trial *de novo* and that the time to file same had expired. Mr. Hanna stated he would have filed the motion had he received my request.

Livigne contends that this "communication breakdown" warrants a relaxation of the 30-day period within which a rejection of the arbitrator's award must be made, *R.* 4:21A–6(b)(1), and requests that her demand for a trial *de novo* be deemed filed *nunc pro tunc.*

In *Cotter v. Dodd*, 204 *N.J.Super.* 561 (Law Div.1985), and *Cuccurullo v. Meskin*, 204 *N.J.Super.* 386 (Law Div.1985), I found that the 30-day filing requirement is similar to the time limitation for filing a motion for a new trial under *R.* 4:49–1. Following this reasoning, I held that the time limitation in present *R.* 4:21A–6(b)(1), like that under *R.* 4:49–1(b), could not be enlarged under *R.* 1:3–4.

My decisions in *Cotter, supra,* and *Cuccurullo, supra,* were recently disapproved by the Appellate Division in *Mazakas v. Wray*, 205 *N.J.Super.* 367 (App.Div.1985). There, Judge Dreier noted that the arbitration time limitations have not been included within the prohibition against enlargement contained in *R.* 1:3–4(c), and held that the 30-day period within which one must move for a trial *de novo* is relaxable in certain cases. *Id.* at 371. The heart of Judge Dreier's decision is reproduced below:

The stated aim of the compulsory arbitration program is to bring speedy and inexpensive adjudication of disputes subject to the Act, "and to ease the burdens and congestion of the State's courts." *N.J.S.A.* 39:6A–24. We agree generally with the import of *Cotter v. Dodd, supra, i.e.,* that the arbitration process, once accomplished, should ordinarily bring about an end to the litigation when neither party has made a timely motion for a trial *de novo.* But the analogy drawn in *Cotter* and *Cuccurullo* to *R.* 4:49–1, which is governed by the prohibitions for enlargement in *R.* 1:3–4(c), is inapposite. We determine that the Courts do possess the power to enlarge the time, but that such power should be exercised only in *extraordinary circumstances.* For example, if plaintiffs contended that defendants through negotiations lulled them into missing the filing date, a court might determine that defendants should be

equitably estopped from raising the 30-day bar and that the petition should be deemed filed *nunc pro tunc*. *See Tantum v. Binz*, 91 *N.J.* 426, rev'g. on Judge Botter's dissent 186 *N.J.Super.* 296, 302 (App.Div.1981). There may also be a finding of substantial compliance with the filing limitation. *Cf. Galligan v. Westfield Centre Service, Inc.*, 82 *N.J.* 188 (1970). These are merely two examples. [*Id.* at 371–372]

Accordingly, I must consider the facts of this case to determine whether they present such "extraordinary circumstances" as would justify a relaxation of the 30-day filing requirement. Judge Dreier has offered two examples, quoted above, neither of which compares with the situation presented here. The *Mazakas* decision does, however, provide further guidance:

> Generally, when asked after the passage of 30 days to bypass the binding effect of this statutory arbitration, the trial courts should be guided by the same principles as they would apply in passing upon a motion for relief from an order or a judgment under *R.* 4:50–1. Of course, the one year limitation of *R.* 4:50–2 would not apply, since this proceeding has its own internal limitation. [*Id.* at 372]

Seizing upon this instruction, Livigne contends that the so-called "breakdown in communication" between her attorney and her insurance carrier amounts to "mistake, inadvertence, ... or excusable neglect" such as would justify relief from a final judgment or order under *R.* 4:50–1(a) and, in accordance with *Mazakas*, would warrant a relaxation of the 30-day requirement in *R.* 4:21A–6(b)(1). I find to the contrary.

■ Although Livigne appears to urge primarily that the error in question constitutes "excusable neglect," whether the circumstances are termed "mistake," "inadvertence," or "excusable neglect," any justification claimed under *R.* 4:50–1(a) must be "compatible with proper diligence." *Baumann v. Marinaro*, 95 *N.J.* 380, 394 (1984). Mere carelessness or lack of proper diligence is insufficient. *Ibid.* (quoting *In re T*, 95 *N.J.Super.* 228, 235 (App.Div.1967)).

■ The error ascribed here is not compatible with proper diligence. I am particularly disturbed by the inability of Allstate's claims adjuster to state with certainty that he telephoned Hanna's office and left a message instructing Hanna to

demand a trial *de novo*. Furthermore, if such a communication was in fact made, I question why it was not confirmed by letter, which is good office procedure.

Nevertheless, assuming that a message was left for Hanna but was never placed in his hand, I find that what occurred here was nothing short of carelessness and a lack of proper diligence. Presumably, Hanna was aware of the time constraints under which he had to proceed with respect to a demand for a trial *de novo*. Proper diligence demanded, at the very least, some follow-up inquiry as to Allstate's intentions when the final day to reject the arbitrator's award was imminent.

The present scenario is analogous to that under review in *Secretary of State v. GPAK Corp.*, 95 *N.J.Super.* 82 (App.Div. 1967). There a docketed judgment was entered against the defendant corporation for failure to file an annual report with the secretary of state as required by *N.J.S.A.* 14:6–2. The attorney for defendant, who was an officer and the registered agent of the corporation, moved under *R.R.* 4:62–2 (the predecessor of *R.* 4:50–1(a)) to set aside the judgment on the ground that the preliminary notice warning him of the delinquency and the notice of entry of judgment had been placed in his file without his knowledge. On appeal from an order of the Law Division setting aside the judgment, the Appellate Division reversed, stating in pertinent part:

> Faulty office procedures on the part of one who was an officer and director of GPAK, as well as its registered agent and attorney, is hardly an excuse in the circumstances here present. Like a default judgment, a docketed judgment like the one here in question should not be reopened on the *mere* grounds of inadvertence or neglect; to justify the vacation of such a judgment, there must be proof that the inadvertence or neglect was *actually excusable. Cf. Ballurio v. Campanaro*, 30 *N.J.Super.* 548, 551–552 (App.Div.1954). [*Id.* at 91; emphasis supplied]

Although Hanna is not an officer or registered agent of Allstate, that distinction is insignificant considering the fact that he, unlike the attorney in *GPAK Corp., supra,* was well aware of the posture of his case and the necessity of quick action thereon. Aside from any "faulty office procedures,"

Hanna's office and Allstate are guilty of inexcusable repose in not making the proper follow-up inquiries. Neither the carelessness of the litigant nor that of the attorney warrants relief from a time limitation.

Although a motion under *R.* 4:50–1(a) is addressed to the sound discretion of the trial judge, it is well settled that deference should be paid to the obvious legislative purpose behind requirements from which relief is sought. *See Secretary of State v. GPAK Corp., supra,* 95 *N.J.Super.* at 91. To be sure, in *Mazakas v. Wray, supra,* Judge Dreier specifically cautioned that

> . the trial court's express and inherent power to relax rules and grant equitable relief must be *sparingly exercised with a view to implementing both the letter and the spirit of the compulsory arbitration statute and the rules promulgated pursuant thereto, to the end that the arbitration proceedings achieve finality.* [205 *N.J.Super.* at 372; emphasis supplied]

The legislative purpose behind the arbitration procedures is clearly set forth in *N.J.S.A.* 39:6A–24:

> The purpose and intent of this act is to establish an informal system of settling tort claims arising out of automobile accidents in an expeditious and least costly manner, and to ease the burdens and congestion of the State's courts.

To relax the 30-day requirement of *R.* 4:21A–6(b)(1) and *N.J. S.A.* 39:6A–31 for the flimsy excuse asserted here would utterly disserve the spirit and letter of the arbitration statute—the teeth of this important legislation would be excised and irretrievably lost. *Cf. Secretary of State v. GPAK Corp., supra,* 95 *N.J.Super.* at 91.

In sum, the error asserted by Livigne in support of her motion to relax the 30-day limitation period does not exemplify those "extraordinary circumstances" envisioned by Judge Dreier when he rendered his decision in *Mazakas v. Wray, supra.*

Finally, I conclude that plaintiffs would be substantially prejudiced if I were to grant a trial *de novo, nunc pro tunc.* As previously recognized, one of the aims of the time limitations in the arbitration statute and the rules promulgated pursuant thereto is to "achieve finality" in the arbitration

proceedings. *Id.*, 205 *N.J.Super.* at 372. In this regard, I find a parallel to the policy behind the time limitation for taking an appeal from a final judgment or order. *See R.* 2:4–1. In dismissing an untimely appeal in *In re Pfizer*, 6 *N.J.* 233 (1951), the Supreme Court stated:

> It may well be that to require a dismissal of this appeal will work a hardship upon the respondents, but such a situation can afford no relief for it is a well-established principle in this State that when the time for taking an appeal has run the parties to a judgment have a *vested right* therein which cannot subsequently be taken from them ... The necessity for and the desirability of the rules governing this cause cannot be questioned, so sound are the reasons and requirements of public policy behind them, for *it is of the utmost importance that at some point judgments become final and litigations come to an end.* [*Id.* at 239; citations omitted; emphasis supplied]

I consider plaintiffs to have gained a "vested right" in the arbitrator's award following the inexcusable failure of Livigne to make a timely rejection of the award coupled with plaintiffs' timely motions for confirmation and entry of judgment thereon. They have a right to expect a speedy and inexpensive end to their litigation—a benefit which the legislature fully intended to bestow. *N.J.S.A.* 39:6A–24.

I will not forsake plaintiffs' recognized expectations—indeed, the reasonable expectations of any party to arbitration, be he plaintiff or defendant—on the basis of the excuse asserted by defendant.

Plaintiffs' motions to confirm the arbitration award are granted. Defendant's cross-motion for an order directing that her demand for a trial *de novo* be deemed filed *nunc pro tunc* is denied.