**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1493-19

APOLLINE HOLDINGS, LLC,

    Plaintiff-Respondent,

v.

ALLIANCE HAND &
PHYSICAL THERAPY, PC,
FRANK MUSCARA AND
SONS, INC., FRANK MUSCARA,
PAMELA MUSCARA, and
STEPHANIE FRANKLIN-
COSGROVE,

    Defendants-Appellants.

_____

Submitted May 3, 2021 – Decided June 25, 2021

Before Judges Sabatino and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3148-18.

The Perkins Firm, LLC, attorneys for appellants (Paul I. Perkins, on the briefs).

The Law Firm of Robert H. Altshuler, attorneys for respondent (Robert H. Altshuler, on the brief).

PER CURIAM

After defendants[1] failed to answer the complaint, the trial court entered default judgment. Six months later, the court denied defendants' motion to vacate the default judgment under Rule 4:50-1(a). We affirm.

Defendants were tenants in a building owned by plaintiff. During the landlord/tenant relationship, plaintiff loaned defendants money under a series of promissory notes. The notes were consolidated in June 2017. Shortly thereafter, plaintiff sold the building. After defendants failed to pay rent to the new owner, the successor landlord began eviction proceedings.[2] Defendants' attempts to obtain financing to pay the promissory notes were unsuccessful.

In December 2017, defendants retained Keith McKenna, Esq. to institute suit, alleging in their complaint that plaintiff misled them regarding the duration of the lease and made them sign documents under false pretenses. Under the hybrid retainer, there was a fee cap of $25,000, after which all work would be

---

[1] Frank Muscara is the President of Frank Muscara & Son, Inc. He executed one of the promissory notes. We refer to him as Muscara. Pamela Muscara, his wife, is the President of defendant Alliance Hand & Physical Therapy, P.C. (Alliance). Stephanie Franklin-Cosgrove is the Vice President and Secretary of Alliance. Pamela and Stephanie executed the other two promissory notes.

[2] In a certification, Muscara advised the eviction proceedings were eventually resolved and as of September 2019, defendants remained as tenants in the building.

A-1493-19

done on a contingency basis. The retainer stated, "[y]ou agree that the Lawyers will represent You in an action against Apolline Holdings, LLC with respect to the Consolidation Agreement for the Promissory Note with Apolline Holdings, LLC."

On January 24, 2018, McKenna filed suit on behalf of defendants (the Bergen County action). The record reflects defendants did not pay the $10,000 retainer required under the agreement. McKenna produced numerous emails sent to defendants attaching invoices and requesting payment for his services.

The Bergen County action was dismissed for lack of prosecution in August 2018. Defendants claim they were unaware of the dismissal. They did not move to set aside that dismissal nor do they appeal from that order.

On November 6, 2018, plaintiff served defendants with a complaint and order to show cause, asserting claims under the promissory notes (the Passaic County action). On November 14, McKenna sent an email to defendants that read, "[c]onfirming our discussion, I need you to bring [$9,000] to the office this week so that I can prepare the opposition material." Two days later, McKenna sent an email stating, "[w]e have called and sen[t] emails requesting payment and advising that we will not be filing any opposition until funds are in hand." Finally, on November 26, 2018, McKenna sent an email that advised:

> Dear Frank and Pam, I have been reaching out to you both via email, text and phone to inquire as to the status of the retention of my firm to file opposition to the application for the relief. The motion is returnable on Friday, November 30, 2018. You have not responded to these efforts. At this time, I will NOT be filing any opposition material and this shall confirm that I have not been engaged in connection with the same. If you would like me to respon[d] on your behalf, please immediately contact my office to set a time to speak by phone.

On November 19, 2018, Muscara wrote to plaintiff's attorney informing him McKenna did not represent defendants in the Passaic County action and that they were "attempting to get a new attorney." Muscara stated further, "I understand from reading the documents that an answer is due to be filed with the court today." He also wrote to Presiding Judge Thomas Brogan in Passaic County on November 26, 2018 providing the same information.

On November 30, 2018, the court entered an order enjoining and restraining defendants from disposing of any of the property listed in the security agreements guaranteeing the promissory notes.

On January 23, 2019, plaintiff filed a notice of request for default. Defendants did not respond to the notice. Thereafter, the court entered final judgment by default on March 7, 2019 against defendants in the Passaic County action. Defendants were served with the judgment.

A-1493-19

On March 28, 2019, Muscara emailed McKenna inquiring about the status of the Bergen County action. In his response, McKenna mistook defendant for another attorney who had worked on the matter. McKenna stated, "I have not heard from those clients nor taken any action on their behalf for sometime [sic]. They did not pay my retainer and fees and decided not to advance the matter. So I closed my file."

In September 2019, represented by new counsel, defendants moved to vacate default judgment in the Passaic County case. Defendants contended that when they retained McKenna in December 2017, they "anticipated" plaintiff would sue them under the promissory notes, and they expected McKenna to represent them on "all issues that arose between [them] and [plaintiff]." Muscara stated he "was shocked when [McKenna] demanded $9000 more to represent us. We . . . thought the money we had already paid would encompass anything that arises from our suit." Muscara asserted the language in the retainer agreement made it clear that McKenna would represent defendants in all matters regarding the consolidation agreement for the promissory notes.

In addition, Muscara indicated he "had hoped that . . . McKenna would use [his] case against [plaintiff] to resolve [plaintiff's] case against [him]." Because he was not apprised the Bergen County case had been dismissed,

5

Muscara believed he "had counsel working on a case to fight [plaintiff]" and all issues would be worked out in his affirmative action.

Plaintiff provided a certification from McKenna in opposition to defendants' motion to vacate. McKenna asserted: "[t]o be absolutely clear, at no time did I serve as counsel for any party in this action." He certified that he was retained by defendants to represent them in the Bergen County action against plaintiff. McKenna further stated that after the complaint was filed, he tried to conduct settlement negotiations between the parties for seven or eight months.

McKenna certified he sent defendants "repeated emails, phone calls, text messages and requests for payment" for his services. However, according to McKenna, "[d]efendants were suffering financial difficulties and after bouncing one check, did not make the payments for fees that were due."

McKenna attached numerous emails evidencing his requests for payment of his services. The exhibits also included emails from defendants. In an email sent in May 2018, Muscara wrote, "working on getting the $10,000 together. I am hoping to have all of it by end of the week. . . ." In June, Muscara offered a $2000 credit card payment towards "the additional $10,000 deposit you require." In October, McKenna again requested payment on the outstanding balance on

A-1493-19

the account. Muscara responded: "Hang in there a little longer . . . we should be good by next week . . . ."

As noted above, defendants were served with the Passaic County action in November 2018. McKenna received a courtesy copy of the complaint and order to show cause from plaintiff's counsel. He advised defendants he required $9000 as payment on the outstanding bill and to oppose the order to show cause. When there was no response, McKenna told defendants he would not file any opposition without the requested payment. Then, on November 26, McKenna sent the letter referred to above advising he would not be filing opposition to the Passaic County complaint and he was not representing them in that case.

In their motion to vacate default, defendants also contested the amount of damages in the final judgment. Plaintiff provided the court with certifications and documentation supporting the court's calculations of damages and the final judgment amount.

The motion judge denied defendants' motion in an oral decision and accompanying order on October 29, 2019. The court found plaintiff "conclusively" demonstrated that defendants knew McKenna was not representing them in the Passaic County action. Therefore, they could not show excusable neglect for failing to respond to the complaint. Moreover, there was

7

no meritorious defense because defendants acknowledged they had executed the promissory notes and had not repaid them pursuant to their terms.

On appeal, defendants contend the motion judge erred in denying their motion to vacate default judgment. They assert they can demonstrate both excusable neglect and a meritorious defense as required under Rule 4:50-1.

We give substantial deference to a trial court's determination of a motion to vacate a default judgment and will not reverse "unless it results in a clear abuse of discretion." U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 467-68 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). We will not interfere with a trial court's exercise of discretion unless the trial judge has pursued a manifestly unjust course or prejudiced the substantial rights of a party. U.S. ex rel. U.S. Dept. of Agric. v. Scurry, 193 N.J. 492, 503 (2008).

Defendants argue the final judgment should be vacated under Rule 4:50-1(a) for excusable neglect. Our Supreme Court has stated that Rule 4:50-1 is "designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid

an unjust result in any given case." Guillaume, 209 N.J. at 467 (quoting Mancini v. EDS on Behalf of N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993)). However, "[c]ourts should use Rule 4:50-1 sparingly, in exceptional situations." Hous. Auth. of Town of Morristown v. Little, 135 N.J. 274, 289 (1994).

To vacate a default judgment, the movant "must show that failure to answer was excusable under the circumstances and that a meritorious defense is available." Id. at 284.

The excusable neglect doctrine is "intended to provide equitable relief from oppressive and unjust judgments; it is 'designed to afford a remedy in the rare situation in which for some equitable reason' a judgment should not be enforced." Sec'y of State v. GPAK Corp., 95 N.J. Super. 82, 91 (App. Div. 1967). "Carelessness may be excusable when attributable to an honest mistake that is compatible with due diligence or reasonable prudence." Mancini, 132 N.J. at 335. A defendant is not entitled to relief if the neglect is willful or calculated. Id. at 336.

Here, defendants contend they demonstrated excusable neglect because they relied on their attorney to represent them. They assert that when they signed the hybrid retainer agreement, McKenna told them that the damages they

9

would recoup from the Bergen County action would outweigh the amounts owed on the promissory notes. Additionally, defendants state their understanding of the retainer agreement was that McKenna would represent them in all matters connected to the notes.

Defendants' contentions are not supported by the record. The Passaic County action was a separate litigation. Upon being served with the complaint, McKenna advised defendants they owed him monies from an unpaid balance in the prior action and they would have to pay him an additional amount for representation in the Passaic County matter. When payment was not forthcoming, McKenna clearly informed defendants he was not representing them and would not be filing papers in the Passaic County case. Furthermore, it is evident defendants understood the circumstances as they advised both plaintiff's counsel and the civil presiding judge in Passaic County that they did not have representation. And, Muscara referred to the due date for his responding papers.

The record reflects defendants knew about the Passaic County action before default judgment was entered and that McKenna was not representing them in that lawsuit. Also, they do not argue they were unaware of the default judgment application.

A-1493-19

Defendants' profession of "shock" regarding McKenna's request for further payment before he would agree to represent them in the Passaic County action also lacks merit. As stated, in all of the emails responding to McKenna's request for payment of the outstanding balance and additional funds, Muscara promised payment was imminent. At no time did defendants challenge the outstanding balance or object to any further payments.

We also disagree with defendants' assertion that the language in the retainer agreement established an understanding that McKenna would be representing them in all matters regarding the promissory notes. To the contrary, the express language stated McKenna would represent defendants "in an action <u>against</u> [plaintiff] with respect to the" promissory notes. (emphasis added). The retainer agreement and the ensuing correspondence clearly establish McKenna was retained solely to institute defendants' claims against plaintiff.

Finally, defendants are sophisticated businesspeople. The Muscaras own several buildings and Frank Muscara runs a business. His wife, Pamela, is a physical therapist and operates her own business – Alliance Hand & Physical Therapy, P.C. – out of several locations. They should have been familiar with leases, financing, the billing of entities and individuals for their services and

paying others for services rendered.  We are satisfied the motion judge properly found there was no excusable neglect.

Nor have defendants established a meritorious defense as required under Marder v. Realty Const. Co., 84 N.J. Super. 313, 318 (App. Div. 1964).  They contend the late fee and default rate contained in the promissory notes is "exorbitant and unreasonable."  Under Metlife Cap. Fin. Corp. v. Wash. Ave. Assoc., L.P., 159 N.J. 484, 496 (1999), "the party challenging the clause bears the burden of proving unreasonableness."

Here, defendants do not deny they owe most of the principal, totaling over $500,000, as well as years of unpaid interest and liquidated late charges.  In the promissory notes executed by defendants, the late fees were defined as "liquidated damages in lieu of actual damages and not as a penalty."  Defendants agreed to the charges when they executed the notes.

Furthermore, through its managing member, plaintiff presented evidence that there were no default interest penalties.  The interest rate increased by 2% on two of the notes if they were not paid by the due date.  The interest on the third note did not increase until after July 1, 2022, so that interest rate has not yet increased.  Plaintiff also provided a certification explaining and countering each of defendants' claims of inaccuracies.  We discern no abuse of discretion

12

in the court's determination that defendants did not present a meritorious defense.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1493-19