625 A.2d 484

MARY JANE MANCINI AND ANTHONY MANCINI, PLAINTIFFS–RESPONDENTS, v. EDS ON BEHALF OF THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT–APPELLANT.

Argued March 2, 1993—Decided June 14, 1993.

*Stacy L. Moore, Jr.,* argued the cause for appellant (*Parker, McCay & Criscuolo,* attorneys).

*Richard S. Hyland* argued the cause for respondent (*Morgan, Bor & Bornstein* and *Montgomery, McCracken, Walker & Rhoads,* attorneys; *Fredric L. Bor,* on the letter brief).

The opinion of the Court was delivered by

POLLOCK, Justice.

This appeal involves a default judgment entered in favor of plaintiffs, Mary Jane Mancini and her husband, Anthony Mancini, against defendant, Electronic Data Systems Corporation (EDS), a servicing carrier of the New Jersey Automobile Full Insurance Underwriting Association, commonly known as the Joint Underwriting Association or JUA. The Law Division denied EDS's motion to vacate the default judgment and its motion to reconsider that judgment. In an unreported decision, the Appellate Division affirmed. We granted defendant's petition for certification, 130 *N.J.* 596, 617 *A.*2d 1219 (1992), and now reverse.

I

On June 17, 1989, Mary Jane Mancini was involved in an automobile accident in which she sustained serious personal injuries. The liability carrier for the other motorist paid her its policy limit of $15,000. Mrs. Mancini then claimed underinsured-motorist benefits under her own insurance policy, which EDS had issued. EDS did not respond to the claim. On June 28, 1990, plaintiffs filed a complaint against EDS seeking payment of personal-injury benefits. The complaint also sought to compel EDS to consent to settle and to arbitrate.

The Sheriff of Burlington County served the complaint on EDS on August 2, 1990. EDS did not answer. On October 10, 1990, the court granted plaintiffs' request to enter a default judgment. On November 9, 1990, plaintiffs' counsel sent to

EDS by certified mail, return receipt requested, an order consenting to settle. An unidentified employee of Toensmeier Adjustment Services, which had contracted with EDS to process claims, stamped the receipt and returned it to plaintiffs. EDS, however, did not respond. On November 14, plaintiffs sent by certified mail a demand for arbitration, which was delivered to EDS on November 16. Again, EDS did not answer.

Plaintiffs thereafter selected an attorney as their arbitrator, and moved for the appointment of a second arbitrator. On January 30, 1991, the Law Division ordered plaintiffs' arbitrator to select a neutral arbitrator and proceed with the arbitration. Plaintiffs sent EDS a copy of the order. And once again, EDS did not answer.

The arbitration proceeded on March 20, 1991, before two arbitrators. One was an attorney selected by plaintiffs and the other an attorney selected by the first. The two attorneys determined liability for plaintiffs and awarded them $810,000, less the $15,000 plaintiffs had already received. By certified mail, plaintiffs' counsel sent EDS a notice of the arbitration award and of EDS's right under *N.J.S.A.* 2A:24–7 to move to vacate or modify the award. EDS received the notice, but again did not answer.

Pursuant to *N.J.S.A.* 2A:24–7, plaintiffs moved to confirm the award. On May 10, 1991, EDS received notice of the application, but did not respond. On June 3, 1991, the Law Division confirmed the award and entered a judgment for plaintiffs, which the court later reduced to the $500,000 policy limit.

Pursuant to the judgment, plaintiffs moved to levy on EDS's bank account, sending a notice of the levy to EDS. Finally, EDS responded. On July 26, 1991, it moved to vacate the default judgment. Plaintiffs cross-moved for a turnover of funds, payment of counsel fees, and enforcement of their rights.

On August 9, 1991, the trial court denied the motion to vacate. Defendant filed a motion for reconsideration, which

the court denied on October 30, 1991. The Appellate Division affirmed. Defendant has paid plaintiffs' counsel fees and has deposited in court $500,000, the policy limit.

II

Defendant seeks review of the Appellate Division's affirmance of the denial of the motion to vacate the default judgment. Under *Rule* 4:50–1, a court may relieve a party from a final judgment for "(a) mistake, inadvertence, surprise, or excusable neglect; ... or (f) any other reason justifying relief from the operation of the judgment or order." The Rule " 'is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.' " *Baumann v. Marinaro*, 95 *N.J.* 380, 392, 471 *A.*2d 395 (1984) (quoting *Manning Eng'g, Inc. v. Hudson County Park Comm'n*, 74 *N.J.* 113, 120, 376 *A.*2d 1194 (1977)).

A court should view "the opening of default judgments ... with great liberality," and should tolerate "every reasonable ground for indulgence ... to the end that a just result is reached." *Marder v. Realty Constr. Co.*, 84 *N.J.Super.* 313, 319, 202 *A.*2d 175 (App.Div.), *aff'd*, 43 *N.J.* 508, 205 *A.*2d 744 (1964). The decision whether to grant such a motion is left to the sound discretion of the trial court, and will not be disturbed absent an abuse of discretion. *Court Inv. Co. v. Perillo*, 48 *N.J.* 334, 341, 225 *A.*2d 352 (1966). All doubts, however, should be resolved in favor of the parties seeking relief. *Arrow Mfg. Co. v. Levinson*, 231 *N.J.Super.* 527, 534, 555 *A.*2d 1165 (App.Div.1989).

In its claim for relief under subsection (a), EDS argues that its neglect in responding to the various claims, notices, and complaints was excusable. " '[A] defendant seeking to reopen a default judgment [because of excusable neglect] must show that the neglect to answer was excusable under the circumstances and that he has a meritorious defense.' " *Morales v.*

*Santiago*, 217 *N.J.Super.* 496, 501, 526 *A.*2d 266 (App.Div.1987) (quoting *Marder, supra*, 84 *N.J.Super.* at 318, 202 *A.*2d 175) (alterations in original). Analysis of defendant's claim requires a further factual explanation.

■   Apparently in response to the termination of the JUA and to the anticipated concomitant decline in claims, Toensmeier reduced its number of employees. It also transferred files to insurance carriers that would provide coverage in the future. Defendant states that it was during this period of "administrative confusion" that plaintiffs served the various documents on the mail-room staff at EDS. For some unexplained reason, those employees did not forward the notices to anyone for response. Further, the notices appear to have been misplaced. As EDS admitted, "there may well [have been] negligence or neglect."

The neglect was inexcusable. Carelessness may be excusable when attributable to an honest mistake that is compatible with due diligence or reasonable prudence. *Baumann, supra*, 95 *N.J.* at 394, 471 *A.*2d 395; *Tradesmens Nat'l Bank & Trust Co. v. Cummings*, 38 *N.J.Super.* 1, 5, 118 *A.*2d 80 (App.Div.1955). The neglect and carelessness of EDS in not responding to plaintiffs' notices, however, were not so compatible. As a servicing carrier for the JUA, EDS is in the business of processing claims. It could reasonably have expected that policyholders would assert claims and that some of the claims would be disputed. For some reason, EDS did not install a procedure for forwarding claims or notices served in its mail room. Nothing in the record excuses EDS's misplacing of those claims and notices or its resulting failure to respond. See *Restatement (Second) of Judgments* § 67 comment b (1980) ("In the case of ... organizations that ought to expect to be sued from time to time, the question [in determining whether neglect is excusable] is whether their procedure for responding, particularly the procedure for putting the case in the hands of counsel, could be expected to function within the time al-

lowed."); *see also Secretary of State v. GPAK Corp.*, 95
*N.J.Super.* 82, 230 *A.*2d 146 (App.Div.1967) (holding that corporation's neglect in receiving notice of entry of judgment against it and not forwarding notice to corporation's registered agent was inexcusable). EDS, therefore, is not entitled to relief under *Rule* 4:50–1(a).

EDS also seeks relief under subsection (f). That subsection authorizes relief from judgments in "exceptional situations." *Baumann, supra*, 95 *N.J.* at 395, 471 *A.*2d 395. As such "[n]o categorization can be made of the situations which would warrant redress under *subsection* (f)." *Court Inv. Co., supra*, 48 *N.J.* at 341, 225 *A.*2d 352, *quoted in Baumann, supra*, 95 *N.J.* at 395, 471 *A.*2d 395, and *Palko v. Palko*, 73 *N.J.* 395, 398, 375 *A.*2d 625 (1977). "[T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." *Ibid.* For relief under subsection (f), "strict bounds should never confine its scope." *Hodgson v. Applegate*, 31 *N.J.* 29, 41, 155 *A.*2d 97 (1959).

█ The circumstances here are sufficiently exceptional to entitle EDS to relief. Because EDS seeks relief from a default judgment, we treat its application indulgently. *See Marder, supra*, 84 *N.J.Super.* at 319, 202 *A.*2d 175. Furthermore, the applicant's neglect, although inexcusable, was neither willful nor calculated. Finally, EDS has paid plaintiffs' counsel fees and has deposited its policy limit of $500,000 with the Law Division. Thus, funds are available to pay any award in favor of plaintiffs. Our primary ground for granting relief, however, is the failure to conduct the arbitration proceeding consistent with the provisions of the arbitration act, *N.J.S.A.* 2A:24–1 to –11.

*N.J.S.A.* 2A:24–3 provides:

Where a party is aggrieved by the failure, neglect or refusal of another to perform under a written agreement providing for arbitration, the superior court may in a summary action direct that the arbitration proceed in the manner provided for in the agreement.

*N.J.S.A.* 2A:24–5 states that if the agreement provides a procedure for the naming of an arbitrator "and a party thereto shall fail to avail himself thereof, ... the superior court may in the summary action provided for in *N.J.S.A.* 2A:24–3 ... designate and appoint an arbitrator...."

The underinsured-motorist policy provides that if a dispute arises between EDS and the insured, "either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction."

After plaintiffs had selected their arbitrator, they requested the court to appoint a second. Instead, the court authorized plaintiffs' arbitrator to appoint a second arbitrator, and ordered that the arbitration should proceed before those two. That panel awarded plaintiffs $810,000. On the motion to vacate judgment, defendant's attorney represented to the court that a defense expert estimated Mancini's claim to be worth approximately $150,000.

■ The arbitration procedure did not conform to either the policy or the arbitration act. Confronted with EDS's failure to appoint its own arbitrator, the trial court should have appointed an arbitrator and directed that the two arbitrators select a neutral arbitrator. The court should not have delegated to plaintiffs' arbitrator the selection of the second arbitrator, and should not have allowed the arbitration to proceed before those two.

An additional reason argues in favor of granting EDS relief. EDS is a servicing carrier for the JUA, which apparently retains ultimate liability for claims against EDS. The JUA, which the State established in 1983 to service drivers whom insurance companies would not voluntarily cover, is currently more than $3.0 billion in debt. See *Assembly Appropriations Comm. Statement to A. 1, L.*1990, *c.* 8; see also *State Farm Mut. Auto. Ins. Co. v. State,* 124 *N.J.* 32, 43, 590 *A.*2d 191

(1991) (stating that JUA's debt is over $3.3 billion). The Fair Automobile Insurance Reform Act (FAIR), *N.J.S.A.* 17:33B–1 to –63, which began the phase-out of the JUA October 1, 1990, provides various sources of revenue to fund the liquidation of JUA's debt. Those sources include an assessment on property-casualty insurers, a surtax on automobile insurance premiums, additional $100 license fees on physicians, lawyers, auto-body repair shops, and others, as well as additional motor-vehicle registration fees. See *Assembly Appropriations Comm. Statement to A. 1, L.*1990, *c.* 8. Private carriers also are required to make loans to the JUA fund, but may not impose a surcharge on premiums to recoup monies lost because of those loans. *See N.J.S.A.* 17:30A–8a(9); *N.J.S.A.* 17:30A–16b.

Thus, policyholders, taxpayers, or private carriers will pay all monies exacted from the JUA. Preferably, defendant's representative should participate in any proceeding that may result in an award against the JUA. *Cf. The Texas Co. v. DiGaetano,* 39 *N.J.* 120, 123, 187 *A.*2d 721 (1963) (vacating default judgment under predecessor of *Rule* 4:50–1, "stressing that the issues were not private in nature but involved matters of public concern"); *Tenby Chase Apartments v. New Jersey Water Co.,* 169 *N.J.Super.* 55, 60, 404 *A.*2d 309 (App.Div.1979) (applying (f) in part because default judgment was against a public utility and therefore "[a]n adversary proceeding on the substantial factual and legal issues involved [is] preferable over one where only plaintiffs' version is heard and considered").

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—None.