813 A.2d 1260 (2003)
357 N.J. Super. 68
FIRST MORRIS BANK AND TRUST, Plaintiff-Appellant,
v.
ROLAND OFFSET SERVICE, INC., a New Jersey Corporation and Karen Shaffer, Defendants-Respondents, and
Permacopy Services, Inc., a New Jersey Corporation, Kurtis A. Shaffer, Barbara Shaffer Michaluk, and John H. Shaffer, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 2003.
Decided January 22, 2003.
Arthur L. Raynes, Morristown, argued the cause for appellant (Wiley, Malehorn and Sirota, attorneys; Mr. Raynes, of counsel and on the brief; James M. *1261 McCreedy and Meri J. Van Blarcom-Gupko, on the brief).
Richard L. Slavitt, West Orange, argued the cause for respondent (Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, attorneys; Mr. Slavitt, of counsel and on the brief; Alona Magidova, on the brief).
Before Judges COBURN, COLLESTER and ALLEY.
The opinion of the court was delivered by
COBURN, J.A.D.
Plaintiff obtained a default judgment in this commercial dispute arising from defendants' admitted breach of a bank loan. Defendants successfully moved to vacate the judgment based solely on Rule 4:50-1(f). Plaintiff appeals, and we reverse. The dispositive question presented is whether defendants' motion was supported by a showing of truly exceptional circumstances.
Plaintiff sued defendants in the Law Division after they defaulted on a $250,000 commercial note. In addition to the balance due, the complaint demanded, among other relief, a twenty percent collection fee. In a related action, plaintiff sued defendant Permacopy Services, Inc., in the Chancery Division to foreclose on a mortgage which secured the note. On February 18, 2000, plaintiff obtained a default judgment in the Law Division for $288,987.38. Included within the judgment, though not expressly so stated, was the twenty percent allowance for collection costs. On March 7, 2000, plaintiff served defendants with a writ of execution. In early June 2000, plaintiff exercised its unquestioned right to apply $161,000 from defendants' corporate bank account in plaintiffs bank in partial payment of the debt. On June 30, 2000, plaintiff received a wire transfer from defendants for the balance of the judgment. On that same date, defendants' attorney wrote to plaintiff, reserving the right to contest the collection cost, which the letter characterized as attorney's fees. Almost six months later, on December 18, 2000, defendants filed their motion to vacate that portion of the judgment which incorporated the twenty percent collection cost award. On January 18, 2001, the trial court granted the motion to vacate under R. 4:50-1(f), and set the matter down for a plenary hearing. The hearing occurred on April 20, 2001, and resulted in a reduction of the collection costs from $48,164.56 to $10,000 on the theory, as expressed by the trial court, that the latter figure represented reasonable counsel fees for the Law Division case "and a recognition of some Bank time."
Defendant's motion to vacate the default judgment was supported factually by a certification of defendant Karen Shaffer. Apart from recounting the history of the proceedings, as outlined above, she certified that defendants did not become aware of the inclusion of the twenty percent collection cost in the judgment until after service of the writ of execution. She described the cost as legal fees which were "unreasonable [and] oppressive," and asserted that it "provides [p]laintiff not with reimbursement for the counsel fees incurred as a result of the breach of the promissory note, but with profit."
Plaintiffs factual reply consisted of two certifications, one from its attorney and the other from a bank officer. These certifications described the substantial efforts of the bank and its attorney in recovering the monies due. The attorney's certification also included the note's provision with respect to collection costs, which provided that on default the bank would be entitled to "collect an amount equal to all *1262 court costs permitted by law, plus twenty percent (20%) of the outstanding amount of this Note[.]"
The trial court found a complete lack of excusable neglect, a ruling to which defendants have raised no objection, and proceeded to analyze the case under Rule 4:50-1(f), the only subsection of the rule on which defendants relied, which provides that a default judgment may be vacated for "any other reason justifying relief from the operation of the judgment or order."
After noting that a twenty percent collection cost is "not in itself unreasonable," the trial court identified the following reasons as justifying vacation of the judgment: (1) what it described in general terms as the limited amount of time spent by plaintiffs counsel on the case; and (2) defendants' payment of the entire judgment by July 1, 2000.
Rule 4:50-1 is intended to reconcile the judicial efficiency resulting from treating judgments as final with the equitable principle of permitting courts to avoid injustice in a particular case. Mancini v. E.D.S., 132 N.J. 330, 334, 625 A.2d 484 (1993). A trial court is obliged to treat applications to vacate default judgments "`with great liberality,' and should tolerate `every reasonable ground for indulgence.... to the end that a just result is reached.'" Ibid. (citation omitted). However, when the application arises solely under subsection (f), the policy favoring finality of judgments becomes more important. Housing Auth. of Town of Morristown v. Little, 135 N.J. 274, 286, 639 A.2d 286 (1994). Therefore, relief "is available only when `truly exceptional circumstances are present.'" Ibid. (citation omitted). While each case must be determined on its own particular facts, ibid., subsection (f) is to be used "sparingly" and only "in situations in which, were it not applied, a grave injustice would occur," id. at 289, 639 A.2d 286 (emphasis added).
Examples of exceptional circumstances implicating grave injustice and warranting reopening of a judgment have included such matters as protection of a family, which included five minor children from being evicted from public housing and rendered homeless, Housing Auth. of Town of Morristown, 135 N.J. at 290-94, 639 A.2d 286; protection of a public fund, Mancini, 132 N.J. at 337-38, 625 A.2d 484; the prevention of recovery for damages for breach of an illegal public contract, Manning Eng'g, Inc. v. Hudson County Park Comm'n, 74 N.J. 113, 123-25, 376 A.2d 1194 (1977); and prevention of harm to a party misled by his attorney who was subject to disciplinary proceedings that ultimately led to disbarment, Court Inv. Co. v. Perillo, 48 N.J. 334, 344-47, 225 A.2d 352 (1966).
Although the question of relief under subsection (f) lies initially within the trial court's discretion, we are obliged to reverse when that discretion has been abused. Mancini, 132 N.J. at 334, 625 A.2d 484.
It is commonplace in commercial loan transactions for the parties to agree that upon default the lender may receive from the borrower collection fees or attorney's fees measured by a percentage of the amount due. J.M. Draper, Annotation, Excessiveness or Inadequacy of Attorney's Fees in Matters Involving Commercial and General Business Activities, 23 A.L.R. 5th 241 (1994). Moreover, percentages from fifteen to twenty-five percent also appear to be commonplace. Id. at 348-56. However, courts will generally consider borrower's claims that the percentage is unfair in light of the amount of collection work actually done, and if that is the case, will reduce the amount. Ibid.
*1263 Twenty percent has been recognized in New Jersey as a presumptively reasonable figure, subject of course to the borrower's timely exercised right to prove the contrary in the particular circumstances of the case. Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll, 44 N.J. 442, 449, 210 A.2d 68 (1965); Metric Investment, Inc. v. Kerner, 145 N.J.Super. 463, 465, 368 A.2d 379 (App.Div.1976); N.J. Mort. & Invest. Corp. v. Young, 134 N.J.Super. 392, 400, 341 A.2d 360 (Law Div.1975). In Bergen Builders, Inc. v. Horizon Developers, Inc., 44 N.J. 435, 210 A.2d 65 (1965), the Court considered a fifteen percent attorney's fee agreement to be proper, subject to the borrowers right to challenge its reasonableness in relation to the legal services actually performed. In Cohen v. Fair Lawn Dairies, Inc., 86 N.J.Super. 206, 212, 206 A.2d 585 (App.Div.), aff'd 44 N.J. 450, 210 A.2d 73 (1965), Judge Conford observed that "[t]he weight of authority throughout the country sustains the validity and enforceability of reasonable provisions for payment by the obligor, in event of default, of a percentage of a promissory note ... to cover the creditor's attorney's fees."
In the instant case, the certification submitted by defendants indicated only that they were unaware, until they received the writ of execution, that the plaintiff had included in the default judgment the twenty percent collection fee. However, the complaint clearly stated that it was seeking that relief, and defendants' decision not to answer was taken while represented by counsel. Moreover, the certifications submitted by plaintiff indicated that a substantial amount of work had been done both by it and its counsel in pursuit of the recovery. While the trial court might have been correct in thinking that the amount seemed high, that finding falls well short of meeting the standard of truly exceptional circumstances required by the above cited cases. We cannot agree that a twenty percent collection fee in a commercial case shows, or even suggests, that a grave injustice occurred, and in any case, it unquestionably did not appear from the papers submitted to the trial court.
With respect to the justice of plaintiff's cause, we observe that once the trial court vacated the twenty percent collection fee, plaintiff could have pursued its alternative remedy of attorney's fees. In that regard, the note contained expansive provisions, including the following:
[The right to receive] Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post judgment collection services.

[Emphasis added.]
One of the anticipated post-judgment services would have been reimbursement of "plaintiff for the attorneys' fees and court costs incurred in obtaining the default judgment and in opposing its vacation in the trial court and in this court on the appeal." Davis v. DND/Fidoreo. Inc., 317 N.J.Super. 92, 102, 721 A.2d 312 (App.Div. 1998), certif. denied, 158 N.J. 686, 731 A.2d 45 (1999).
The trial court acknowledged that by the time of the final hearing plaintiff had incurred legal fees of approximately $33,000. Further substantial fees have also been generated by this appeal. In these circumstances, the twenty percent collection fee cannot be seen as unreasonable.
For all of the reasons cited, we are satisfied that the trial court's vacation of the default judgment was an abuse of discretion. *1264 Therefore, the order vacating the default judgment and the judgment under appeal are reversed. Consequently, the original default judgment is reinstated.
Reversed.