**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0647-17T3

S&M GULF INC., LEDGEWOOD
PETROLEUM, LLC, and J&M
GULF, INC.,

      Plaintiffs,

and

GULF EXPRESS, INC.,

      Plaintiff-Appellant,

v.

GULF OIL, LP, and PMG
NEW JERSEY II, LLC,

      Defendants-Respondents,

and

BLUE HILL FUELS, LLC, and CH
REALTY VII/CG NORTH EAST
BLUE HILLS, LLC,

      Defendants.

_____

Submitted January 9, 2019 – Decided January 28, 2019

Before Judges Reisner and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000059-16.

Kimm Law Firm, attorneys for appellant (Michael S. Kimm, on the brief).

Lerch, Early & Brewer Chtd., attorneys for respondents Petroleum Marketing Group, Inc., PMG Northeast, LLC, and PMG New Jersey II, LLC (Stuart A. Schwager, on the brief).

Pepper Hamilton, LLP, attorneys for respondent Gulf Oil, LP (Arthur C. Young and Stephanie L. Jonaitis, of counsel and on the brief).

PER CURIAM

Plaintiff Gulf Express, Inc. appeals from a September 25, 2017 order denying its motion to vacate a settlement agreement and a stipulation of dismissal it signed with defendants PMG New Jersey II, LLC, (PMG) and Gulf Oil, LP (Gulf). We affirm.

The following facts are taken from the motion record. Commencing in 2003, plaintiff became a franchisee of Gulf. Pursuant to a franchise agreement executed in 2003, and later amended in 2015, plaintiff operated a gas station and

A-0647-17T3

convenience store in Fort Lee.  In March 2016, plaintiff and other franchisees,[1] filed a complaint alleging a violation of the New Jersey Franchise Act, N.J.S.A. 56:10-1 to -31, naming Gulf and Blue Hills Fuels, LLC, (Blue Hills) as defendants.  The complaint sought temporary and preliminary injunctive relief to halt the sale to a third party of the equity in Blue Hills, which owned over 220 gasoline station properties in seven northeastern states, including New Jersey, and the right to supply gas to those stations.  Plaintiffs asserted they should have been afforded the opportunity to purchase their franchise premises from Gulf pursuant to a right of first refusal clause contained in their respective franchise agreements.

Following a preliminary hearing, the motion judge entered a consent order granting preliminary injunctive relief.  The parties then commenced negotiations, which yielded a settlement agreement that they signed on September 22, 2016.  As a result of the settlement, a stipulation of dismissal was signed and filed with the court.

The settlement agreement set forth a mechanism for plaintiffs to purchase the franchise premises.  In pertinent part, it stated:

---

[1] Plaintiffs S&M Gulf, Inc., Ledgewood Petroleum, LLC, and J&M, Gulf, LLC have not filed appeals from the order under consideration.

A-0647-17T3

The PMG Defendants shall give the Franchisees options to purchase ("the Purchase Options") PMG NJ's interests in the Franchise Premises . . . PMG NJ's leasehold interest in such premises[], through the following procedures:

(a)  The Franchisees and the PMG Defendants shall obtain their own separate appraisals (each individually, an "Appraisal" and together, the "Appraisals") of each of the Franchise Premises . . . the lease between the PMG Defendants and their landlord . . . by independent MAI-certified appraisers, and shall simultaneously exchange such appraisals through their counsel of record by no later than two . . . business days after the full execution of this Agreement by all the Parties (the "Exchange Date").  Notwithstanding the foregoing, . . . it is agreed that the PMG Defendants shall, by the Exchange Date, provide J&M's counsel with a copy of the . . . PMG Defendants' Appraisal of their leasehold interest . . . .  Within thirty . . . days of its receipt of such documents, J&M shall complete its Appraisal of the PMG Defendants' leasehold interest . . . and provide such Appraisal to the PMG Defendants' counsel . . . .

(b)  If, as to any Franchise Premises . . . the difference, if any, in the appraised values of any of the Franchise Premises . . . pursuant to the Appraisals (the "Appraisal Difference"), is ten percent . . . or less, the Franchisee of that particular Premises shall have the option to purchase the PMG Defendants' interest in such Premises for a price that is equal to the lower of the two . . . Appraisals plus fifty percent . . . of the Appraisal Difference. . . .

(c)  If the Appraisal Difference for any given Franchise Premises is more than ten percent . . . , then either (i) the Franchisee of those Franchise Premises

4

A-0647-17T3

may elect to purchase the PMG Defendants' interest in such Premises for a price that is equal to the PMG Defendants' Appraisal, or (ii) if the foregoing election is not made, the Franchisee of those Franchise Premises and the PMG Defendants shall retain an independent MAI-certified appraiser (an "Independent Appraiser"), who shall be selected by the [court] from the list of seven MAI-certified appraisers attached hereto as Exhibit A (each, a "Potential Independent Appraiser"), to render an appraisal of those premises or lease, as the case may be (an "Independent Appraisal"). If [the court] is to select the Independent Appraiser, the Franchisee and the PMG Defendants through their respective counsel shall request in writing, enclosing a copy of Exhibit A, that he select one of the Potential Independent Appraisers and [the court]'s selection shall be binding upon the Franchisee and the PMG Defendants. Upon selection of the Independent Appraiser by [the court], said Independent Appraiser shall be jointly engaged by the Franchisee of those Franchise Premises and the PMG Defendants to promptly appraise the Franchise Premises . . . . Contemporaneously with the joint engagement of the Independent Appraiser, the PMG Defendants and the Franchisee shall each provide their respective Appraisals to the Independent Appraiser. The cost of the Independent Appraisal shall be borne equally by the Franchisee of those particular Franchise Premises and the PMG Defendants. Where an independent Appraisal is obtained for any given Franchise Premises, the Franchisee shall have the option to purchase the Franchise Premises . . . for a price that is equal to the Independent Appraisal.

The settlement agreement also stated each party had "completely read[,] . . .

understood[,] . . . and . . . fully accept[ed] the terms of [the] [a]greement."

A-0647-17T3

Plaintiff decided to exercise the purchase option set forth in the settlement agreement with respect to the property in Fort Lee. Valuations were conducted by appraisers retained by plaintiff and defendants, respectively. Defendants' appraisal provided a final value of $3,650,000. Notably, it did not include the convenience store business in the valuation as a going concern. Plaintiff's appraisal was $2,300,000, and also did not include a valuation of the business as a going concern. Because the $1,350,000 difference between the two appraisals was greater than the ten percent threshold set forth in the settlement agreement, defendants asked the motion judge to select an independent appraiser pursuant to the terms of the settlement agreement. In response, plaintiff filed an order to show cause seeking to reinstate the complaint, enforce the settlement agreement, and require defendants to accept plaintiff's valuation.

The motion judge denied plaintiff's application without prejudice and entered an order appointing a third independent appraiser, as required by the settlement agreement, to resolve the impasse. The judge concluded the parties had agreed upon the third appraisal as a dispute resolution mechanism, and that he would allow it "to run its course while preserving the rights to have judicial intervention in the event that [the] end result is unsatisfactory to any party."

A-0647-17T3

Before the independent appraisal could be conducted, plaintiff filed a motion to vacate the settlement agreement and the stipulation of dismissal. Pursuant to Rule 4:50-1(a), (d), and (f), plaintiff claimed the parties failed to achieve a meeting of the minds, mutual mistake, and lack of consideration. Specifically, plaintiff argued there had been no common understanding regarding what would be appraised, namely, the fee simple property interest on which plaintiff operated the gas station and convenience store, or the property interest and the convenience store as a going concern.

The motion judge denied plaintiff's motion. Plaintiff sought reconsideration and the judge again denied its motion stating, "[i]t is merely a [r]e-presentation of that which has already been presented and rejected by the court." The independent appraisal ordered by the judge proceeded and valued plaintiff's franchise premises at $3,400,000.

Plaintiff renewed its motion to vacate the settlement agreement and stipulation of dismissal, asserting the appraisals required by the settlement agreement did not define what was included in "franchise premises." The motion judge denied the motion in the September 25, 2017 order, now on appeal. The judge stated he

> agree[d] with PMG that the settlement agreement, in fact, does define the term . . . franchise premises. The

settlement agreement provides . . . that the recital clauses set forth above are made an integral part of this agreement and are true and correct . . . .

The first recital in the settlement agreement defines the term . . . franchise premises as follows: . . . Whereas . . . the franchisees were . . . independently owned franchisees of Blue Hills and operated retail gasoline stations in New Jersey pursuant to written agreements with Blue Hills . . . franchise agreements, on properties they've leased from Blue Hills and operated under the Gulf-registered trademark brand . . . the . . . franchise premises, . . . selling motor fuel they purchased from Blue Hills.

Now, three things about that. Number one they do define what they consider to be a franchise premises. Number two those references to Blue Hills really are no[t] germane as they pertain to PMG, from whom PMG derived its rights.

And, number three, . . . the first parentheses, . . . was franchise agreements. The second parentheses . . . was franchise premises.

The seventh recital also refers to the . . . Franchise Premises . . . .

So for those reasons, I find that . . . what the parties intended by "franchised premises" is in fact reflected in the settlement agreement.

As for the appraisals themselves, the motion judge noted plaintiff had not challenged their competency or asserted the valuation methodology deviated from standard appraisal practice. The judge also noted "[t]he independent

appraiser did not find itself disabled from carrying out its assignment based on any inability to identify exactly what it was to appraise."

Most importantly, the motion judge quoted from the PMG's appraisal, which stated the valuation reflected "real property . . . [and] do[es] not . . . reflect a going-concern valuation. . . . [T]herefore, there is no business allocation[.]" Additionally, the judge recited the following from the independent appraiser report:

> We are of the understanding that PMG . . . owns the real property and has no interest in the going concern operating from the premises. As the real property and going concern appear to be two separate, unrelated entities, we are of the opinion that franchise premises relates solely to the real property.

Thus the judge concluded "the value [the independent appraiser] gave, like the value that [PMG's appraiser] gave, was of the franchise premises and was of the actual property located in Fort Lee."

The judge concluded there had been no mutual mistake. He stated:

> What was valued was the price a willing, uncoerced buyer would be willing to pay to a willing, uncoerced seller for this premises. This was, as [the court] indicated, an arm's length transaction between corporate parties represented by counsel. There was no mutual mistake as to what was to be valued. One party had a different understanding of whether or to what extent the going-concern value of the convenience store and/or gas station would feature into the analysis.

A-0647-17T3

> That private, unshared understanding of what could and could not be included in the valuation does not provide a basis for the [c]ourt to vacate the settlement when that which was produced was, in fact, in accordance with the plain language of what the settlement provides for.

Plaintiff's motion was denied. This appeal followed.

## I.

The decision whether to grant a motion for relief from a final judgment under Rule 4:50-1 "is left to the sound discretion of the trial court[.]" Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993). "The [r]ule is 'designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.'" US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Mancini, 132 N.J. at 334). "The trial court's determination . . . warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion." Ibid. An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 467-68 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

A-0647-17T3

On appeal, plaintiff argues there was no meeting of the minds and contends the parties had different interpretations of the rights being sold. Plaintiff asserts the inclusion of the going concern was beyond the scope of appraisal. It argues the settlement agreement is void because the term "franchise premises" was not defined. Therefore, plaintiff asserts there was a mutual mistake because the parties were bargaining under the same mistaken belief and lacked a common understanding of a critical term. We disagree.

The Supreme Court has stated:

> As a general rule, courts should enforce contracts as the parties intended. Similarly, it is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties. The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the "expressed general purpose."
>
> [Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (citations omitted).]

Also, we have noted:

> where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written. The court has no right "to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into,

or to alter it for the benefit of one party and to the detriment of the other.

[Karl's Sales & Serv., Inc. v. Gimbel Bros., 249 N.J. Super. 487, 493 (App. Div. 1991) (citations omitted).]

We conclude, as the motion judge did, that plaintiff's arguments regarding a lack of common intent and mutuality of mistake are without merit. The facts do not support plaintiff's claim the contract was ambiguous or misunderstood by the parties, the appraisers, or the motion judge. The dispute here did not turn on an interpretation of the terms of the settlement agreement because neither defendants' appraisal, nor the independent appraisal, included a valuation of the convenience store business as a going concern. The appraisals, including plaintiff's, may have been divergent, but valued the same object. For these reasons, the denial of plaintiff's motion to vacate the settlement agreement was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0647-17T3