**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1684-17T2

FULTON BANK OF NEW
JERSEY, as successor by merger
from SKYLANDS COMMUNITY
BANK,

      Plaintiff-Respondent,

v.

J.B. CONTRACTING, INC.,
STANLEY J. KAPUSTA, JR.,
and WILLIAM ALLEN CRAYNE,

      Defendants,

and

JOHN KAPUSTA,

      Defendant-Appellant.

_____

          Submitted November 9, 2018 – Decided January 29, 2019

          Before Judges Whipple and DeAlmeida.

          On appeal from Superior Court of New Jersey, Law
          Division, Somerset County, Docket No. L-0344-16.

Gray Law Group, attorneys for appellant (Bruce D. Nimensky, on the brief).

Rudolph A. Palombi, Jr., attorney for respondent.

PER CURIAM

Defendant John Kapusta appeals from the October 27, 2017 order of the Law Division denying his motion to vacate a default judgment entered against him in this action to enforce a commercial loan guaranty. We affirm.

I.

The following facts are derived from the record. On May 7, 2008, Kapusta sold his interest in defendant JB Contracting, Inc. (JB), which consisted of all issued and outstanding shares of the corporation, to his nephew and another man for more than $2.6 million.[1] On that date, Kapusta resigned in writing as Chief Executive Officer, President, Secretary, Treasurer, and Director of JB. Prior to the sale, Kapusta secured a line of credit from Skylands Community Bank (Skylands Bank) on behalf of JB. At the time of the sale, there was no amount due on the line of credit.

---

[1] The record refers to defendant Stanley J. Kapusta, Jr. alternatively as John Kapusta's son, nephew, and brother. We accept as accurate a representation by John's counsel that Stanley is John's nephew. The precise nature of their familial relationship is not relevant to the outcome of this appeal.

On August 25, 2008, Kapusta signed a $200,000 promissory note in favor of Skylands Bank on behalf of JB, identifying himself as President of JB. It is not clear whether Kapusta had reassumed the role of President of JB, or merely represented himself as holding that office at the time of the loan. Kapusta also signed a personal guaranty in favor of Skylands Bank for $200,000, in which JB was identified as the borrower. The loan documents list Kapusta's guaranty as security and collateral for JB's loan. Plaintiff Fulton Bank of New Jersey (Fulton Bank) is the successor to Skylands Bank by merger.

In December 2015, JB defaulted on the promissory note. According to the terms of the note, the default accelerated all amounts due.

On March 4, 2016, Fulton Bank filed a complaint in the Law Division against JB, Kapusta, his nephew, and the other principal of JB. The bank alleged that Kapusta, as a guarantor of the JB's promissory note, was obligated to pay all amounts due under the note.

Kapusta concedes that he was served with the complaint on March 19, 2016. According to Kapusta, shortly after he received the complaint, he contacted his nephew, who purportedly advised Kapusta that he would retain an attorney to represent him in this matter. Kapusta took no further action to ensure that his interests were represented. He did not request the name of the attorney

3

retained to represent him, did not request a copy of any documents filed on his behalf, and did not make any inquiries with respect to the progress of the matter.

No attorney was retained to represent Kapusta. As a result, an answer was not filed on his behalf. On May 4, 2016, a default was entered against Kapusta with notice. On October 28, 2016, the court entered a final judgment against Kapusta and in favor of Fulton Bank in the amount of $214,473.18, plus accrued interest to September 30, 2016.

Almost a year later, on October 3, 2017, Kapusta moved to vacate the final judgment. He alleged excusable neglect for his failure to file an answer and argued that he could raise a meritorious defense to the complaint. Kapusta alleged that in September 2008, a representative of Skylands Bank, aware that Kapusta had sold his interest in JB, and was no longer an officer of the company, asked Kapusta to "work with him" to "roll over" JB's existing line of credit. Kapusta alleged that he "made it clear" to the representative that he was not guarantying JB's loan, and was only assisting him to "avoid going back to his bosses at the Bank" and to circumvent "the steps needed to secure a new line of credit." Kapusta alleged that the representative assured him orally that he was not guarantying JB's loan. Kapusta did not allege that his signatures on the

promissory note or personal guaranty were forged. He did not explain why he identified himself as JB's President on the promissory note.[2]

In response, the bank representative involved in the transaction certified that in August 2008, Kapusta had not informed him nor the bank that he had sold his interest in JB. In addition, he certified that with respect to Kapusta's allegation that the bank was "rolling over" an existing line of credit, "each loan to this borrower was evaluated on its own merits at the time it was made" and that "had . . . Kapusta not agreed to guaranty the loan, [JB] would not have received the $200,000[.]"

On October 27, 2017, the trial court denied Kapusta's motion. In his thorough written opinion, Judge Thomas C. Miller concluded that Kapusta had demonstrated neither excusable neglect nor a meritorious defense. The court concluded that "[e]ven minimal diligence requires . . . Kapusta to take other steps more than one call to [his nephew] before his actions could be demonstrated as 'excusable.'" With respect to the merits of Kapusta's defense, the court concluded that it was clear that Kapusta executed both the promissory note and the guaranty, that he identified himself as President of JB when doing

---

[2] Although Kapusta alleges the transaction took place in September 2008, both the promissory note and the guaranty are dated August 25, 2008.

A-1684-17T2

so, and that the terms of those contracts were unambiguously stated in writing. In addition, the court found that Kapusta's claim that he was released from personal liability by a verbal representation of a bank official was barred by the parol evidence rule, given the integrated nature of the contracts.

On October 27, 2017, the trial court entered an order denying Kapusta's motion. This appeal followed.

## II.

Rule 4:43-3 provides that the court may set aside a default judgment in accordance with Rule 4:50-1. An application to vacate a judgment pursuant to Rule 4:50-1 is addressed to the motion judge's sound discretion, which should be guided by equitable principles. Hous. Auth. v. Little, 135 N.J. 274, 283 (1994). "[T]he opening of default judgments should be viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div. 1964). A trial court's determination under Rule 4:50-1 is entitled to substantial deference and will not be reversed in the absence of a clear abuse of discretion. US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). To warrant reversal of the trial court's order, Kapusta must show that the decision was "made without a rational explanation, inexplicably departed from

A-1684-17T2

established policies, or rested on an impermissible basis." Guillaume, 209 N.J. 467-68 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007) (internal quotations omitted)).

Kapusta seeks relief under subsection (a) of Rule 4:50-1, which allows a judgment to be set aside for "mistake, inadvertence, surprise, or excusable neglect[.]" "Generally, a defendant seeking to reopen a default judgment because of excusable neglect must show that the failure to answer was excusable under the circumstances and that a meritorious defense is available." Little, 135 N.J. at 284 (citing Mancini v. EDS, 132 N.J. 330, 334-35 (1993)). "Carelessness may be excusable when attributable to an honest mistake that is compatible with due diligence or reasonable prudence." Mancini, 132 N.J. at 335.

Having carefully reviewed Kapusta's arguments in light of the record and applicable legal principles, we affirm the October 27, 2017 order for the reasons stated by Judge Miller in his thorough and well-reasoned written opinion. As the trial court found, Kapusta's failure to take any steps to ensure that an answer was filed on his behalf does not constitute excusable neglect. Nor has he demonstrated a meritorious defense, given that as a sophisticated businessman he signed an unambiguous guaranty of JB's loan, which clearly stated that the parties' agreement was fully integrated in the written document, precluding his

proffered evidence of an oral promise that directly contradicts the central covenant of the guaranty.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION