NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0220-19T1

LVNV FUNDING, LLC,
a/p/o, CITIFINANCIAL, INC.,

     Plaintiff-Appellant,

v.

JOSEPH DEANGELO,

     Defendant-Respondent.

_____

**APPROVED FOR PUBLICATION**

**June 15, 2020**

**APPELLATE DIVISION**

     Argued telephonically May 19, 2020 –
Decided June 15, 2020

     Before Judges Fisher, Accurso and Gilson.

     On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1242-09.

     Stephen M. Orlofsky argued the cause for appellant (Blank Rome LLP, attorneys; Stephen M. Orlofsky, Michael R. Darbee, and Kenneth L. Bressler, of the New York Bar, admitted pro hac vice, on the brief).

     Michael Oliver Kassak argued the cause for respondent (White and Williams LLP, attorneys; Michael Oliver Kassak, of counsel and on the brief).

    The opinion of the court was delivered by

FISHER, P.J.A.D.

This appeal – in which plaintiff would have us reverse an order that vacated a default judgment and dismissed its complaint – presents some unusual circumstances and conflicting equities.

Plaintiff filed its complaint to collect a debt in July 2009 and, when defendant failed to respond, obtained a $29,647.66 default judgment in February 2010. Plaintiff's efforts to collect on its judgment proved unsuccessful; its calls and letters were ignored, and attempts in March 2010 and September 2012 to obtain a wage execution failed. Finally, in October 2017, plaintiff was able to garnish defendant's wages, prompting him to move in 2018[1] for relief from the default judgment.

After discovery and a plenary hearing, the judge determined that defendant defaulted on the obligation no later than March 2004 when he stopped making payments, and there is no dispute that the suit was filed in July 2009. As a result, the judge concluded that plaintiff violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 – 1692p, because it failed to commence the suit "within four years after the cause of action . . . accrued," N.J.S.A. 12A:2-725(1). The judge, however, also found that defendant's neglect in failing to

---

[1] Defendant first moved for relief in February 2018; that motion was denied without prejudice. He moved again, this time with counsel, in September 2018.

respond to the complaint was inexcusable. In weighing these conflicting circumstances, the judge concluded that plaintiff's breach of the Fair Debt Collection Practices Act outweighed defendant's inexcusable neglect; relying on Rule 4:50-1(f), the judge granted the motion and dismissed the time-barred complaint. Finding no abuse of discretion in the judge's choice between these competing circumstances, we affirm.

Certain facts relevant to this case are undisputed; other relevant facts were either unclear or disputed and, as to those, the judge made findings of fact. The undisputed facts, and those found by the judge after an evidentiary hearing – to which we are required to defer, Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974) – reveal that in 2001, defendant secured a loan from Auto One Acceptance Corporation to purchase a Mercedes-Benz. Believing the vehicle was defective, defendant stopped making payments soon after. The record reveals that Auto One and defendant entered into a modification agreement in December 2003, but there is no evidence that defendant made any payments in the following months and years. This debt was transferred by Auto One to CitiFinancial, Inc., and later still, in November 2007, to plaintiff LVNV Funding, LLC.

3

Plaintiff offered no proof that any payments were made on this debt between December 2003, when the modification agreement was reached, and November 2008, when the final payment under the modification agreement was due.[2]  Plaintiff asserts that two payments were made in November 2008 and another attempted in January 2009.  Specifically, plaintiff demonstrated that it sent the matter to a debt collector, Redline Recovery, which allegedly received from defendant, in November 2008, two $1000 money orders.  Plaintiff also claims a $4000 check was received in January 2009 but returned for insufficient funds.  Plaintiff claims that it could not provide any further or more persuasive evidence than this because Redline went out of business in 2014.[3]  Defendant, however, testified he did not make the 2008 and 2009 payments, and the judge

---

[2]  The modification agreement required that defendant make "59 monthly installments of $736.51 beginning January 04, 2004, and continuing until November 04, 2008, when the final payment will be due."  The agreement also stated that "[t]he final payment" due in November 2008 will include any unpaid principal balance and accrued interest "not yet paid as of such date together with any other sums then payable under the [c]ontract or this agreement."

[3]  Plaintiff alludes to Redline's demise as an event that somehow excuses it from presenting better proof of the loan's payment history.  But it is obvious from the circumstances presented that the owner of the claim remained intent on collecting on this debt since the time of the default and, for that reason alone, had an interest in retaining all relevant records.  That defendant may have slept on his rights while plaintiff or its predecessors engaged in formal and informal attempts to collect does not form a foundation for plaintiff's current claim that defendant's delay caused it prejudice.

A-0220-19T1

found him credible on this point.[4]   As a result, the judge concluded that: (1) defendant defaulted on the loan obligation no later than March 2004; (2) even if made by defendant, the November 2008 payments did not cure the default, Midland Funding LLC v. Thiel, 446 N.J. Super. 537, 548 (App. Div. 2016) (holding that a default arises on "the first date on which the debtor fails to make a minimum payment" and that subsequent "partial payments less than the minimum payment required after the date of default does not change the date of default, and thus does not change the date on which the cause of action accrued")[5]; and (3) the statute of limitations had already run on plaintiff's claim when the complaint was filed on July 13, 2009.   We defer to the judge's resolution of these factual disputes.

---

[4]   In his opinion, the judge stated that "[d]espite major issues with the [d]efendant's credibility in some areas, in others" he found him "believable." The judge "found his testimony regarding the 2008 and 2009 alleged payments to be credible" and found "incredible that the [d]efendant would use a money order to make a payment," an action "not consistent with any behavior of the [d]efendant." These are findings to which we must defer.

[5]   As already observed, the modification agreement required the entire loan obligation to paid off in November 2008 when the two $1000 payments were made. Since plaintiff later sought and obtained a $29,647.66 default judgment in 2010, it cannot be seriously argued that these November 2008 $1000 payments – made when defendant owed far more – constituted anything but a partial payment that could not extend the action's accrual date.

A-0220-19T1

The record also contained evidence that many calls and letters were sent to defendant regarding this debt over the years[6] and that, when suit was filed, plaintiff was able to effect service of process on defendant at his home,[7] and defendant thereafter did nothing about the judgment until moving for relief under Rule 4:50 more than eight years after the judgment's entry.  The judge found defendant's inactivity to be inexcusable.  We defer to these factual findings as well.  To be sure, the facts were disputed, and reasonable minds could differ about the evidence and the credibility of the testimony.  But our obligation is not to "engage in an independent assessment of the evidence as if [we] were the court of first instance."  State v. Locurto, 157 N.J. 463, 471 (1999).  We may not disturb judge-made fact findings "unless . . . convinced they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  Rova Farms, 65 N.J. at 484.

---

[6] For example, the judge found that defendant received communications from plaintiff and, in fact, responded to plaintiff in June 2010 by pretending to be someone other than himself.

[7] The judge heard testimony from a sheriff's officer and from defendant and concluded that the sheriff's office had properly served defendant in 2009.

A-0220-19T1

And, so, with these findings, the motion judge was faced with the question of what to do about, on the one hand, plaintiff having obtained a default judgment by violating the Fair Debt Collection Practices Act in bringing suit on a time-barred claim on a debt defendant does not deny and, on the other, defendant's inexcusable disregard of the default judgment for years. In weighing these circumstances, we cannot lose sight that a court's power to vacate a judgment is based on equitable principles. Hodgson v. Applegate, 31 N.J. 29, 37 (1959). Courts must often choose the weightier of two competing equitable rights; at times they may even have to choose the least blameworthy of two competing wrongs. This case seems to fall in the latter category.

The judge found plaintiff acted in violation of federal law by suing on a time-barred claim, but also that defendant inexcusably ignored a judgment on that time-barred claim – he waited eight years and lied about his identity – before seeking relief. The judge applied subsection (f) of Rule 4:50-1, the so-called catchall provision, which permits relief in "exceptional situations." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 484 (2012); Baumann v. Marinaro, 95 N.J. 380, 395 (1984). The Supreme Court has determined that this subsection permits relief even when a defendant's response or failure to respond to a complaint was found, as here, to be inexcusable. Mancini v. Eds ex rel. N.J.

A-0220-19T1

Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993). In such instances, subsection (f)'s boundaries are "as expansive as the need to achieve equity and justice." Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1977). Faced with such an application, a court's obligation is "to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Manning Eng'g, Inc. v. Hudson Cty. Park Comm'n, 74 N.J. 113, 120 (1977).

Mancini provides the applicable framework, though there are factual differences. For instance, in Mancini, the defendant's neglect was found inexcusable but "neither willful nor calculated." 132 N.J. at 336. The judge here found defendant's neglect inexcusable and calculated, as demonstrated, for example, by his mendacity about his identity. But plaintiff, too, was found to have acted in bad faith by commencing this suit in the face of the time-bar. This is revealed by the judge's rejection of plaintiff's attempt to excuse the late filing; plaintiff's former attorney testified he believed the statute of limitations had not expired because of the November 2008 payments but the judge found this testimony was "not credible."

Despite the problematic conduct and motivation of both parties, the judge ultimately viewed the decision as turning not on which of the parties acted worse

8

but on the weight of the competing public policies. On defendant's side was plaintiff's commencement of a time-barred claim in violation of federal policy, which strongly favors the curbing of "abusive debt collection practices." 15 U.S.C. § 1692(a). The countervailing state policy urged by plaintiff is what the Supreme Court referred to as "the strong interests in finality of judgments and judicial efficiency." Baumann, 95 N.J. at 392; see also Mancini, 132 N.J. at 334. Both these policies cannot be served here; one must give way to the other. The judge determined that the interest in curbing abusive collection practices outweighed the interest in the finality of judgments. In the final analysis, we cannot conclude that the choice the judge made constitutes an abuse of the discretion provided by Rule 4:50-1(f).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0220-19T1