**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2193-21

USBANKCUST/PROCAP8/
PROCAPMGTII,

     Plaintiff-Respondent,

v.

BLOCK 268, LOT 7 38
BRENWAL AVE.,
TOWNSHIP OF EWING,
STATE OF NEW
JERSEY, ASSESSED TO:
188TH BRENWAL AVENUE
DEVELOPMENT LLC,

     Defendant-Appellant.

_____

Submitted October 3, 2023 – Decided January 18, 2024

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. F-006684-20.

The Kelly Firm, PC, attorneys for appellant (Andrew J. Kelly, of counsel and on the briefs; Nicholas D. Norcia, on the briefs).

Sherman, Silverstein, Kohl, Rose & Podolsky, PA, attorneys for respondent (Bruce S. Luckman, on the brief).

PER CURIAM

Defendant, 188th Brenwal Avenue Development, LLC appeals from the January 8, 2021, Chancery Division order denying its motion to vacate a tax sale foreclosure judgment in favor of plaintiff, PC8REO, LLC, pursuant to Rule 4:50-1. We reverse and remand for an evidentiary hearing.

I.

The property at issue is located at 38 Brenwal Avenue in Ewing Township, and is described on the tax map as Block 268, Lot 7. On November 9, 2018, defendant, a New Jersey real estate investment limited liability company, purchased the property for $97,900. On December 30, 2019, the Ewing Township tax collector issued a tax sale certificate on the property in the amount of $6,569.66 for unpaid tax and sewer charges, which certificate was purchased by USBANKCUST/PROCAP8/PROCAPMGTII (Procap).

On June 18, 2020, Procap filed an in rem tax sale foreclosure complaint alleging that the property was abandoned in accordance with the Abandoned Properties Rehabilitation Act (APRA), N.J.S.A. 55:19-78 to -107. By way of background, the holder of a tax sale certificate has no right to foreclose sooner

than two years from the certificate's acquisition unless the property is abandoned within the meaning of APRA, in which case the foreclosure action may be commenced "any time" after the certificate's acquisition. See N.J.S.A. 54:5-86(b) (authorizing "[a]ny person holding a tax sale certificate on a property" that meets the statutory definition of abandoned property "either at the time of the tax sale or thereafter," to "at any time file an action with the Superior Court in the county wherein said municipality is situate, demanding that the right of redemption on such property be barred . . . .").

A tax sale certificate holder may show abandonment in two general ways. First, the holder may file with the complaint "a certification by the public officer or the tax collector that the property is abandoned." N.J.S.A. 54:5-86(b). The second path allows a court to make such a finding by considering both the plaintiff's "evidence that the property is abandoned, accompanied by a report and sworn statement by an individual holding appropriate licensure or professional qualifications," ibid., and, of course, any opposing evidential material.

On August 3, 2020, Procap pursued the second path and filed a motion seeking a declaration from the court that the property was abandoned. In support, Procap submitted a certification dated April 4, 2020, prepared by Dino

3

Cavalieri, a licensed construction official. Cavalieri's certification consisted of a preprinted form listing the statutory abandonment factors, with Cavalieri's corresponding affirmative notations.

Specifically, in the certification, Cavalieri averred that he "personally inspected the exterior of the property" on April 4, 2020. He certified that the property was abandoned pursuant to N.J.S.A. 55:19-81 because it "ha[d] not been legally occupied for at least six . . . months preceding the date of th[e c]ertification;" "[was] in need of rehabilitation and no rehabilitation ha[d] taken place during the last six months[;]" "[a]t least one installment of property tax[es] remain[ed] unpaid[;]" and the condition of the property rendered it "unfit for human habitation, occupancy or use" because, among other things, the "electric meter [was] not operating" and the "steps [were] not secure." See N.J.S.A. 55:19-81 (delineating criteria for a determination of abandonment, including that "[t]he property is in need of rehabilitation . . . and no rehabilitation has taken place during [a] six-month period[,]" "[a]t least one installment of property tax remains unpaid and delinquent on th[e] property[,]" and "[t]he property has been determined to be a nuisance by the public officer" in accordance with N.J.S.A. 55:19-82); see also N.J.S.A. 55:19-82(a) (defining nuisance as the property being "unfit for human habitation, occupancy or use").

A-2193-21

The motion was served on defendant's registered agent at a Neptune address and on defendant's managing agent at the property address. On August 28, 2020, the trial court granted Procap's unopposed motion and entered an abandonment order. The August 28, 2020, abandonment order was served on defendant's registered agent at a Neptune address and on defendant's managing agent at the property address.

On October 21, 2020, Procap assigned its rights in the tax sale certificate to plaintiff, PC8REO, LLC, and subsequently moved to substitute plaintiff in all pleadings, which the court granted. On November 17, 2020, the court entered an uncontested order in plaintiff's favor for final judgment on the foreclosure complaint, vesting title in the property to plaintiff and barring any right of redemption. The final judgment was mailed to defendant on November 24, 2020.

On December 3, 2020, defendant moved to vacate the November 17, 2020, final judgment pursuant to Rule 4:50-1. In support of the motion, defendant submitted the certification of Santi Rodriquez, defendant's property manager. Rodriquez certified that "the property was never abandoned but waiting for construction permit approvals." According to Rodriquez, "[p]ermits were filed with the City of Ewing on [August 20, 2019]," and between August 20, 2019,

and March 25, 2020, "[t]he City of Ewing was in the process . . . of doing a plan review." As a result, "[n]o work could be done during that period of time."

Rodriquez averred that once "the building department issue[d] the permit" on March 25, 2020, "work began." However, he explained that "[they] had to shut down" during April 2020 when Cavalieri's inspection occurred "due to COVID 19" and Governor Murphy's "[E]xecutive [O]rder 122 to cease all non-essential construction projects." Rodriquez stated that once the ban was lifted, work "resumed." As a result, they "had an [i]nspection for [f]ire [and e]lectrical on May 26, 2020," "an inspection for [p]lumbing on May 27[], 2020," "a building inspection" on May 29, 2020, "a [f]ire [i]nspection" on June 12, 2020, and "a [m]echanical inspection" on June 17, 2020.

According to Rodriquez, they ultimately "passed all inspections," "have been working on the property," and anticipated completing the work "sometime in December 2020." Rodriguez added that had plaintiff's inspector "checked with the building department he would have seen this information," and they were unaware of the litigation because "[they] were never served with notification of the motion for [a]bandonment or [f]inal foreclosure action." Supporting documents were submitted with Rodriguez' certification, which

6

included a PSE&G bill for the property with a due date of May 21, 2020, and showing current gas and electricity charges for the property.

Plaintiff opposed the motion and submitted a certification of counsel pointing out that on October 26, 2018, and July 9, 2019, Ewing Township issued violation notices citing defendant for over twenty violations at the property, including a violation for failure to obtain required inspections and working without a permit.[1]  Further, according to counsel, "on June 23, 2020, a Stop Construction Order was issued for the [p]roperty for [d]efendant's failure to correct[] violations and failure to obtain permits," and on June 25, 2020, "a Notice of Violation and Order to Terminate was issued for the [p]roperty."

Additionally, counsel averred that

> [o]n May 8, 2020, [p]laintiff served [d]efendant with pre-foreclosure notices by way of certified mail to the [p]roperty and to 1301 Corlies Ave. Suite 6E, Neptune, New Jersey 07753, which is the address for [d]efendant's registered agent, the address on file with the Ewing Township tax collector where tax bills for the [p]roperty are mailed to [d]efendant, and the address for [d]efendant on its deed to the [p]roperty. The certified mail sent to the [p]roperty was returned marked, "moved left no address" and that certified mail sent to 1301 Corlies Ave. Suite 6E, Neptune, New Jersey 07753 was returned marked "unclaimed."

---

[1]  The July 9, 2019, notice indicated that when the construction official arrived at the property at approximately 2:45 p.m. on July 9, 2019, he observed ongoing work in "all construction disciplines."

7

Further, counsel certified that on August 3, 2020, plaintiff served defendant with its motion to declare the property abandoned "at the [p]roperty," as well as at "its registered agent['s office]," its "tax bill address," and "its deed [address]" on Corlies Avenue in Neptune. Counsel stated the abandonment order was served on defendant "on September 1, 2020[,] at the [p]roperty and its registered agent's office." According to counsel, plaintiff also "caused to be published in the Trenton Times, . . . a notice of [i]n [r]em [f]oreclosure, pursuant to [Rule] 4:64-7(b)."

Counsel continued:

> In addition, on September 1, 2020, in accordance with the provisions of [Rule ]4:64-7(c), [p]laintiff caused to be mailed notice of the within [i]n rem [f]oreclosure action, in sealed envelopes, with postage prepaid, simultaneously by first class and certified mail, return receipt requested, addressed to [d]efendant. Such service was sent to [d]efendant at the [p]roperty, its tax bill/registered agent address/deed address at 1301 Corlies Ave. Suite 6E, Neptune, New Jersey 07753 and to 27 Marbourne Dr., Mamaroneck, NY 10543, which is an additional address listed on [d]efendant's registered agent report. The certified mail sent to the [p]roperty was returned marked "vacant" further bolstering the status of the [p]roperty as abandoned. The [d]efendant signed the return receipt for the service sent to 1301 Corlies Ave., Ste. 6E[,] Neptune, [New Jersey] 07753 two times. Defendant additionally signed the return receipt for the certified mail sent to 27 Marbourne Dr., Mamaroneck, NY 10543. . . .

8

. . . Further, [p]laintiff posted a true copy of the published Notice of In Rem Tax Foreclosure in a conspicuous location at the [p]roperty in accordance with [Rule] 4:64-7(d) on September 8, 2020. . . .

. . . On September 23, 2020, La'Toya Wilkinson, assistant to Santi Rodriguez, the principal of the property owner, who maintains [d]efendant's address at 1301 Corlies Ave., Ste. 6[E], Neptune[,] [New Jersey] 07753 sent the Ewing Township Tax Collector correspondence indicating [d]efendant's desire to redeem the [t]ax [l]ien on October 14, 2020. Defendant's subsequent correspondence to the Ewing Township Tax Collector dated October 28, 2020[,] and November 24, 2020[,] stated that [d]efendant spoke with Amy, who is a paralegal at the office for [p]laintiff's counsel, and advised that [d]efendant intended to redeem the [t]ax [l]ien, further confirming [d]efendant's knowledge of the [t]ax [l]ien and foreclosure proceedings. . . .

On January 8, 2021, following oral argument, the court entered an order denying defendant's Rule 4:50-1 motion. In an accompanying written opinion, the court rejected each of defendant's arguments ad seriatum. First, regarding inadequate service, the court stated:

Plaintiff overwhelmingly refutes [d]efendant's assertion of inadequate service. Plaintiff demonstrates that they published the notice of In Rem Foreclosure pursuant to Rule 4:64-7(b) and served such notice upon [d]efendant per Rule 4:64-7(c) on September 1, 2020[,] by way of first class and certified mail, return receipt requested at its registered agent/tax bill/deed address, 1301 Corlies Ave., Ste. 6E, Neptune, New Jersey 07753, the very address that appears on [d]efendant's

9

signature line on the correspondence from [d]efendant to the Ewing Township tax collector in September 2020, shortly after [d]efendant received service. Additionally, [d]efendant signed the return receipt for such service two times and [d]efendant signed the return receipt for service sent to the other address on its registered agent report, 27 Marbourne Dr., Mamaroneck, NY 10543. Plaintiff also observes that the certified mail sent to the [p]roperty was returned to [p]laintiff marked "vacant," buttressing its argument (and the [c]ourt's finding) that the property was abandoned.

Next, rejecting defendant's defense that the property was not abandoned, the court stated:

> Defendant maintains that its defense to the foreclosure action derives from the fact that the property is not truly abandoned. However, neither this application nor any other mounts [d]efendant's challenge to the order entered declaring the property abandoned, and nothing in Rule 4:50-1 enables it to serve as a vehicle for a collateral attack on a wholly separate order. Moreover, in support of its application, [p]laintiff submitted the certification of a qualified individual certifying that the property was abandoned; in this application, an unqualified representative of [d]efendant attacks that conclusion but does not dispute that the property was unoccupied for a period of six months or more and that property taxes remained unpaid. Nothing in N.J.S.A. 55:19-81 requires the inspector to check with the municipality's building department to evaluate whether any permits were approved and pending on the date of inspection.

The court concluded:

10

Plaintiff has demonstrated by far more than a preponderance of the evidence that it[ ha]s effectuated service upon [d]efendant and [d]efendant had every opportunity to seek reconsideration of the order declaring the property as abandoned or to seek leave to appeal that interlocutory order. Defendant took no such steps. Nothing in [d]efendant's submission asserts mistake, inadvertence, surprise, or excusable neglect and none is apparent to the [c]ourt on this record. Finally, as [p]laintiff points out, [d]efendant does not assert or even suggest that it is prepared to make [p]laintiff whole for the fees and costs incurred on this property or to actually fulfill its obligation to pay property taxes to the Township.

This appeal from the January 8, 2021, order followed.[2]

On appeal, defendant argues "the court committed several errors" in denying its Rule 4:50-1 motion to vacate the final judgment. Among the errors, defendant asserts "the court accepted as 'overwhelming[]' [p]laintiff's proofs of service" when plaintiff "fell short of its obligations under Rule 4:64-7(c)."[3]

---

[2] Defendant filed a bankruptcy petition on February 12, 2021, that resulted in an automatic stay of all proceedings. After the bankruptcy court granted defendant's motion to allow defendant to pursue an appeal from the final judgment in the State court, defendant filed a notice of appeal on March 23, 2022, seeking to appeal the August 28, 2020, November 17, 2020, and January 8, 2021 orders. On November 3, 2022, we entered an order determining that only the appeal of the January 8, 2021, order was timely and "the August 28 and November 17, 2020 orders [were] not properly before the court."

[3] Rule 4:64-7(c) delineates service requirements for in rem tax foreclosure proceedings.

11

According to defendant, because "[a] judgment flowing out of a proceeding against a litigant not duly served 'is void,'" the judgment should be set aside. Defendant further argues the court erred in ruling that defendant was precluded from challenging the underlying abandonment order while moving to vacate the final judgment of foreclosure because the abandonment order was the foundation for the foreclosure order. Defendant asserts that because the abandonment order was predicated on insufficient evidence that the property was abandoned, evidence defendant disputed with credible evidence of ongoing construction and current energy usage at the property, the foreclosure judgment should be vacated.

At the very least, defendant contends "the court misapplied its discretion" by "failing to resolve doubt in [d]efendant's favor . . . where there were disputed issues of fact," and "fail[ing] to weigh the excusable neglect issue in [d]efendant's favor, particularly with respect to issues far beyond [d]efendant's control such as the City of Ewing's permitting process and the ongoing global pandemic." We reject defendant's contentions regarding defective service and determine they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). We agree, however, with defendant's assertion that the abandonment order, upon which the final judgment of foreclosure was

12

premised, was predicated upon disputed facts regarding whether the property met the statutory definition of abandonment. In light of the contested record, we vacate the final judgment of foreclosure and remand for an evidentiary hearing to determine whether the property was properly ruled abandoned in accordance with APRA, a determination pivotal to whether plaintiff was entitled to seek foreclosure when it did.

## II.

Under Rule 4:50-1, a party may move for relief from a judgment or order for the following reasons:

> (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under [Rule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

"Rule 4:50-1 does not accord tax sale foreclosure judgments greater respect than judgments obtained under other laws that are supported by equally

13

strong public policy." BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 129 (App. Div. 2021). Nonetheless, Rule 4:50-1 "[was] designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Id. at 123 (quoting Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977)). As such, a motion for relief under Rule 4:50-1 should be granted "'sparingly [and only] in exceptional situations . . . in which, were it not applied, a grave injustice would occur.'" Badalamenti by Badalamenti v. Simpkiss, 422 N.J. Super. 86, 103 (App. Div. 2011) (alterations in original) (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 289 (1994)).

A motion to vacate based on one of the six enumerated grounds in Rule 4:50-1 "is a determination left to the sound discretion of the trial court, guided by principles of equity." F.B. v. A.L.G., 176 N.J. 201, 207 (2003). That said, the "[trial] court's judgment will be left undisturbed 'unless it represents a clear abuse of discretion.'" Ibid. (quoting Little, 135 N.J. at 283). A court abuses its discretion "'when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super.

378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).  Because principles of equity guide a judge's consideration of a Rule 4:50-1 motion, a request to vacate a default judgment must "be viewed with great liberality," with "every reasonable ground for indulgence . . . tolerated to the end that a just result is reached."  Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div. 1964).  Still, under the rule, the movant bears the burden of demonstrating his or her entitlement to relief.  See Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425-26 (App. Div. 2003).

Although defendant did not specify in the trial court, on appeal, defendant primarily relies on subsections (a), (b), and (f) of the Rule.  Rule 4:50-1(a) "requir[es] a showing of excusable neglect and a meritorious defense."  US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 468 (2012).  "'Excusable neglect' may be found when the default was 'attributable to an honest mistake that is compatible with due diligence or reasonable prudence.'"  Ibid. (quoting Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 335 (1993)).  Rule 4:50-1(f), the so-called catch-all, "affords relief only when 'truly exceptional circumstances are present.'"  Ibid. (quoting Little, 135 N.J. at 286).

Indeed, "[n]o categorization can be made of the situations which would warrant redress under subsection (f). . . .  [T]he very essence of (f) is its capacity

for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 269-70 (2009) (second and third alteration in original) (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). To that end, we have considered additional factors in deciding whether relief under subsection (f) is warranted, including "(1) the extent of the delay in making the application; (2) the underlying reason or cause; (3) the fault or blamelessness of the litigant; and (4) the prejudice that would accrue to the other party." Parker v. Marcus, 281 N.J. Super. 589, 593 (App. Div. 1995).

We acknowledge that "[f]oreclosure is a harsh remedy and equity abhors a forfeiture. A court of equity may invoke its inherent equitable powers to avoid a forfeiture and deny the remedy of foreclosure." Sovereign Bank, FSB, v. Kuelzow, 297 N.J. Super. 187, 198 (App. Div. 1997) (quoting Brinkley v. W. World, Inc., 275 N.J. Super. 605, 610 (Ch. Div. 1994), aff'd o.b., and modified on other grounds, 292 N.J. Super. 134 (App. Div. 1996)). Nonetheless, APRA is intended to provide a tool for local governments to rehabilitate abandoned properties and avoid blight and declining property values. See N.J.S.A. 55:19-79. As such, properties designated as abandoned are eligible for special tax sales. See N.J.S.A. 55:19-101.

Under APRA,

> any property that has not been legally occupied for a period of six months and which meets any one of the following additional criteria may be deemed to be abandoned property upon a determination by the public officer that:
>
> > a. The property is in need of rehabilitation in the reasonable judgment of the public officer, and no rehabilitation has taken place during that six-month period;
> >
> > b. Construction was initiated on the property and was discontinued prior to completion, leaving the building unsuitable for occupancy, and no construction has taken place for at least six months as of the date of a determination by the public officer pursuant to this section;
> >
> > c. At least one installment of property tax remains unpaid and delinquent on that property in accordance with [N.J.S.A. 54:4-1 to -136] as of the date of a determination by the public officer pursuant to this section; or
> >
> > d. The property has been determined to be a nuisance by the public officer in accordance with [N.J.S.A. 55:19-82].
>
> [N.J.S.A. 55:19-81(a) to (d).]

Once an abandoned designation has been made, the purchaser of the tax sale certificate may commence a foreclosure proceeding, but the abandoned

17

property owner may redeem his rights at any time, subject to court order. N.J.S.A. 55:19-58(c) ("After the foreclosure action is instituted, the right to redeem shall exist and continue to exist until barred by the judgment of the Superior Court[.]").  A tax sale certificate "creates only a lien on the premises" and is "not an outright conveyance;" it "conveys the lien interest of the taxing authority." Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 163 (App. Div. 2005) (quoting Savage v. Weissman, 335 N.J. Super. 429, 436 (App. Div. 2002)).  Additionally, the "interest of the holder of the tax sale certificate is entirely subordinate to the statutory right of redemption of the property owner." Ibid. (quoting Savage, 335 N.J. Super. at 436).

Here, because the final foreclosure judgment was based on the abandonment designation, the propriety of the abandonment designation necessarily informed whether vacating the foreclosure judgment was appropriate under Rule 4:50-1.  While defendant's failure to pay taxes on the property was undisputed, the remaining facts supporting the abandonment designation were not.  Critically, the threshold requirement for an abandonment designation, that the property had not been legally occupied for six months, a fact attested to by Cavalieri, was disputed by the certification of Rodriquez, defendant's property manager, who attested that the property was undergoing

18

rehabilitation construction that had been delayed by the permit approval process and the pandemic. If accepted, Rodriquez' certification demonstrated that defendant had by no means abandoned the property.

Significantly, other than his April 4, 2020, inspection, Cavalieri's certification, which consisted of a preprinted form listing the statutory abandonment factors and Cavalieri's confirmatory notations, did not explain the basis for his conclusion that the property had not been occupied for at least six months. See Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 599 (App. Div. 2011) ("A certification will support the grant of summary judgment only if the material facts alleged therein are based, as required by Rule 1:6-6, on 'personal knowledge.'" (quoting Claypotch v. Heller, Inc., 360 N.J. Super. 472, 489 (App. Div. 2003))). In contrast, Rodriquez' certification showed that in the six months preceding Cavalieri declaring that the property had been abandoned for six months, defendant had applied to the City of Ewing for construction permits and obtained approval after the third attempt. In addition, within that six-month period, Governor Murphy had declared a public health state of emergency. See Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020). Once the ban was lifted and the permits secured, Rodriquez averred that construction resumed with its concomitant inspections.

A-2193-21

We, of course, draw no conclusions on the abandonment issue except to observe the presence of genuine factual disputes in the parties' competing certifications that should be examined at an evidentiary hearing. Because the abandonment determination was pivotal to whether plaintiff was entitled to seek foreclosure when it did, all that followed must be vacated. We therefore reverse the decision denying the motion to vacate the final judgment of foreclosure, remand for an evidentiary hearing consistent with this opinion, and vacate the final judgment of foreclosure, effective immediately, without prejudice to the outcome of the remanded proceedings.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2193-21