# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4130-23

J.D.A.,[1]

    Plaintiff-Respondent,

v.

M.F.T.,

    Defendant-Appellant.

_____

        Argued November 12, 2025 – Decided November 26, 2025

        Before Judges Firko and Vinci.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-2455-24.

        Lisa G. Nolan argued the cause for appellant (Klineburger and Nussey, attorneys; D. Ryan Nussey and Lisa G. Nolan, on the briefs).

        Vadim Korytny argued the cause for respondent.

PER CURIAM

---

[1] We use initials to identify the parties in accordance with Rule 1:38-3(d)(10).

Defendant M.F.T. appeals from a June 3, 2024 final restraining order (FRO) entered in favor of plaintiff J.D.A., his former girlfriend, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on the predicate act of harassment, N.J.S.A. 2C:33-4. He also appeals from a July 31, 2024 order denying his motion for reconsideration. The Family Part judge reviewed defendant's certification filed in support of the motion for reconsideration to vacate the FRO and denied relief because the reason alleged by defendant that he "honestly missed the court date" did not constitute a good faith basis to warrant relief.

After considering the record in light of the parties' arguments and the applicable law, we affirm entry of the FRO and the order denying reconsideration.

I.

In her domestic violence complaint, plaintiff alleged that defendant repeatedly called, texted her, and showed up wherever she was despite her requests not to do so after she ended the relationship. Plaintiff alleged on May 20, 2024, defendant left a note on her vehicle stating, "I love you, call me." Plaintiff claimed defendant left her other notes on her vehicle as well.

A-4130-23

According to plaintiff, she blocked defendant's cell number on her phone, but he continued to call and text her daily.

Plaintiff alleged defendant sent her a text message stating, "I left everything for you, moved away, and now [we are] not together." Later the same day, defendant texted plaintiff, "don't ignore me." While at work, plaintiff alleged her supervisor advised her about a suspicious vehicle driving around plaintiff's parked vehicle. Plaintiff went to the parking lot and found a bag containing her personal items. Plaintiff also alleged defendant sent her a text message depicting a photograph of her children's father's home and using degrading language regarding the residence, which caused plaintiff concern.

In terms of prior history, plaintiff alleged during an argument a year ago, defendant pushed her with his two hands and grabbed her by the hair. Plaintiff claimed defendant kicked her out of his residence while he held her by the hair. On another occasion, in 2021 while the parties were at a zoo, plaintiff questioned defendant after she observed him staring at another woman. Plaintiff alleged when they returned home defendant "screamed" at her, pushed her with a piece of furniture, shoved her, grabbed her by the arm, and "shook" her. Plaintiff alleged defendant told her, "It's your fault. You're crazy."

A-4130-23

Plaintiff alleged defendant told her he was "untouchable," and the police would never believe her if she called them. On many occasions, plaintiff claimed defendant confronted her in an "aggressive manner," grabbed her by the hair, dragged her throughout the house, and took her outside. Plaintiff alleged defendant has been violent toward his dogs and kicked them when they had "an accident" on the floor.

The complaint alleged the predicate act of harassment. In terms of jurisdiction, the box which states "dating relationship" was checked off. Plaintiff sought and was granted a temporary restraining order (TRO), which ordered defendant to have no contact with her or her two children and barred him from her residence and place of employment.

On May 25, 2024, at 2:27 p.m., defendant was served with the TRO by Patrolman Grant of the Sayreville Police Department.[2] The TRO stated the FRO hearing was scheduled for June 3, 2024, at 8:30 a.m., at the Middlesex County Family Part courthouse. The TRO provided the address and courtroom number for the FRO hearing, and a telephone number. Defendant acknowledged service and receipt of the TRO containing the above-stated information.

_____

[2] Officer Grant's first name is not contained in the record.

A-4130-23

At the ensuing trial held on June 3, 2024, plaintiff was self-represented and testified with the aid of a Spanish interpreter. Plaintiff testified as to the allegations set forth in her complaint and corrected several dates, which were misstated in her complaint. Regarding the handwritten notes left on her vehicle, plaintiff testified she knew defendant wrote them because she recognized his handwriting. Plaintiff also described an altercation wherein defendant "grabbed and twisted her hand," and the dog bit defendant on his left hip, appearing to defend plaintiff.

The judge asked plaintiff to explain why she needed an FRO. In response, plaintiff testified she knows defendant "very well," and when "something bothers him, he turns very aggressive." Plaintiff stated defendant "might attack" her and "do something" to her and her children. Plaintiff testified defendant knows she lives alone with her children, "he's not going to stop," he is going to continue to harass her, try to get back together with her, and there has been "a long history of abuse." No other witnesses testified, and no items were moved into evidence. Defendant did not appear at the FRO hearing or contact the court requesting an adjournment.

Following plaintiff's testimony, the judge placed her decision on the record. The judge found jurisdiction was established under the PDVA because

5

the parties had a dating relationship. The judge determined plaintiff was a "very credible" witness and made "good eye contact." The judge reasoned plaintiff was "very clear in her testimony" and informed the court about incorrect dates in the TRO, which were originally typed at the police station, and "ma[de] sure the record was correct and clear."

The judge explained plaintiff showed her the bag left by defendant at her car and two notes where defendant stated plaintiff should "come over," provided his "code," and requested she call him. The judge cited the elements of the harassment statute and determined plaintiff met her burden of proof by a preponderance of the evidence that defendant committed harassment.

The judge highlighted defendant "does not accept any boundaries," and continues to text plaintiff daily. The judge credited plaintiff's testimony about the prior history of domestic violence, specifically being "pushed, grabbed by the hair, [and] dragged through the house." The judge emphasized defendant's conduct was "utterly unacceptable." The judge found an FRO was warranted because plaintiff was concerned about defendant's relentless conduct and being aggressive with her physically in the past. The judge determined plaintiff had a concern about her safety going forward and issued the FRO.

A-4130-23

Defendant was served with the FRO. On June 14, 2024, he filed a motion for reconsideration as a self-represented litigant. In his moving certification, defendant stated he "honestly missed the court date," and he "apologize[d] for that." Defendant certified he filed the motion "based solely" on plaintiff's "false accusations" and requested the judge hear his side of the story. Defendant stated he moved from Pennsylvania to New Jersey to live with plaintiff and her children. Defendant claimed plaintiff "displayed jealous behavior" by placing an "AirTag tracking device" in the trunk of his vehicle. Defendant claimed the accusations against him were "exaggerated and taken out of context," and there were "several inconsistencies" that needed to be reviewed.

On July 31, 2024, in an oral opinion, the judge denied defendant's motion for reconsideration. The judge determined defendant was properly noticed for the FRO hearing on May 25, 2024 when he was served. The judge found defendant "neither appeared nor called" or made any inquiry of the court, he "simply failed to appear."

Further, the judge noted she waited "a significant period of time to give [defendant] the opportunity to appear" on the day of the FRO hearing and did not finalize the FRO until "approximately 12:55 p.m." The case was called at 8:30 a.m. The judge reiterated she found plaintiff's testimony "credible," and

7

the allegations were serious enough to issue the FRO. The judge noted defendant waited eleven days to move for reconsideration claiming plaintiff's testimony was "fabricated." The judge concluded defendant failed to establish a good faith basis for his failure to appear in the first place. A memorializing order was entered. This appeal followed.

On appeal, defendant argues the judge's finding of harassment is unsupported by the record, and the FRO must be reversed. Defendant contends the judge failed to analyze the second Silver[3] prong and abused her discretion in denying his motion for reconsideration.

## II.

Our review of a trial court's decision to enter an FRO in a domestic violence matter is limited. Peterson v. Peterson, 374 N.J. Super. 116, 121 (App. Div. 2005). "A reviewing court is bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

---

[3] Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006).

"Reversal is warranted only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice. . . .'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts." Id. at 433 (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. at 125. "The judge must [first] determine whether the plaintiff has proven, by a preponderance of the credible evidence," that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a), which incorporates harassment, N.J.S.A. 2C:33-4, as conduct constituting domestic violence. Id. at 125-26. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); see N.J.S.A. 2C:25-29(a)(1).

A finding of harassment requires proof that the defendant acted "with purpose to harass." N.J.S.A. 2C:33-4; see Silver, 387 N.J. Super. at 124. Although a purpose to harass may, in some cases, be "inferred from the evidence," and may be informed by "common sense and experience," a finding by the court that the defendant acted with a purpose or intent to harass another is integral to a determination of harassment. State v. Hoffman, 149 N.J. 564, 577 (1997).

We note that purposeful conduct "is the highest form of mens rea contained in our penal code, and the most difficult to establish." State v. Duncan, 376 N.J. Super. 253, 262 (App. Div. 2005) (emphasis omitted). Its establishment requires proof, in a case such as this, that it was the actor's "conscious object to engage in conduct of that nature or to cause [the intended] result." N.J.S.A. 2C:2-2(b)(1). A plaintiff's assertion that the conduct is harassing is not sufficient. J.D. v. M.D.F., 207 N.J. 458, 484 (2011). Further, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Id. at 487.

When deciding the issues of intent and effect, we are mindful of the fact that:

> harassment is the predicate offense that presents the
> greatest challenges to our courts as they strive to apply

the underlying criminal statute that defines the offense to the realm of domestic discord. Drawing the line between acts that constitute harassment for purposes of issuing a domestic violence restraining order and those that fall instead into the category of "ordinary domestic contretemps," . . . presents our courts with a weighty responsibility and confounds our ability to fix clear rules of application.

[Id. at 475 (citation omitted).]

"[T]he decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." Id. at 484.

If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)[(7)], to protect the victim from an immediate danger or to prevent further abuse." Id. at 475-76 (quoting Silver, 387 N.J. Super. at 127). The factors which the court should consider include, but are not limited to:

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment[,] and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

11

(5) In determining custody and parenting time the protection of the victim's safety;

(6) The existence of a verifiable order of protection from another jurisdiction; and

(7) Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights with the court specifically considering evidence of the need for protection from immediate danger or the prevention of further abuse. If the court finds that one or more factors of coercive control are more or less relevant than others, the court shall make specific written findings of fact and conclusions of law on the reasons why the court reached that conclusion. Coercive control may include, but shall not be limited to:

(a) isolating the person from friends, relatives, transportation, medical care, or other source of support;

(b) depriving the person of basic necessities;

(c) monitoring the person's movements, communications, daily behavior, finances, economic resources, or access to services;

(d) compelling the person by force, threat, or intimidation, including, but not limited to, threats based on actual or suspected immigration status;

(e) threatening to make or making baseless reports to the police, courts, the Division of Child Protection and Permanency (DCPP) within the Department of Children and Families, the Board

12

of Social Services, Immigration and Customs Enforcement (ICE), or other parties;

(f) threatening to harm or kill the individual's relative or pet;

(g) threatening to deny or interfere with an individual's custody or parenting time, other than through enforcement of a valid custody arrangement or court order pursuant to current law including, but not limited to, an order issued pursuant to Title 9 of the Revised Statutes; or

(h) any other factors or circumstances that the court deems relevant or material.

[N.J.S.A. 2C:25-29(a).]

Although the court is not required to incorporate all of these factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Cesare, 154 N.J. at 402 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)). Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment[,] and physical abuse," and on "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995).

The court must exercise care "to distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence." R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017). The PDVA is not intended to encompass "ordinary domestic contretemps." Corrente, 281 N.J. Super. at 250. Rather, "the [PDVA] is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)).

A.

We first address defendant's argument that the judge abused her discretion in denying his motion for reconsideration. Under Rule 4:49-2, reconsideration should be granted only where (1) "the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis," or (2) "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). In other words, "a motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling." Conforti v. County of Ocean, 255 N.J. 142, 169 (2023) (quoting Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015)).

14

Defendant contends he had twenty days to file his motion for reconsideration after the FRO was entered, yet he filed it within eleven days. Thus, defendant maintains the judge abused her discretion in holding the eleven-day delay against him. Instead, defendant argues the judge should have considered his motion "with great liberality, and . . . tolerate every reasonable ground for indulgence . . . to the end that just result is reached[,]" citing to Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993) (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div. 1964)).

Our review of the record satisfies us that the judge's decision was evidentially supported. Defendant's motion for reconsideration baldly asserted he made an "honest mistake" regarding the scheduled date and time for the FRO hearing. This bare assertion of an honest mistake, without more, does not constitute a justifiable reason for defendant's absence at the FRO hearing. As the judge aptly pointed out, defendant did not advance a good faith basis as to why he did not appear in the first place or attempt to call the court. The judge properly denied the motion because a careless mistake, incompatible with due diligence or reasonable prudence, is not excusable. Mancini, 132 N.J. at 335.

A-4130-23

We are convinced the judge did not abuse her discretion in finding defendant failed to take prompt action in seeking relief. The record reveals that despite defendant's misstep, the judge considered his arguments. The record further reveals the judge reiterated the basis for granting plaintiff an FRO. Thus, we discern no error by the judge in denying defendant's motion for reconsideration.

B.

Defendant argues the judge failed to specify which subpart of the harassment statute he violated. Defendant maintains the judge presumably relied on subsection (c), "engag[ing] in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c). Defendant reasons the judge could not have found he violated subsection (a) or (b) because no evidence was proffered of his contact at extremely inconvenient hours or use of offensively coarse language and no suggestion of offensive touching or threats to do so.

Defendant concedes the judge found he violated subsection (c) based on the finding he had persistent contact with plaintiff after he was "repeatedly" told to stop. According to defendant, the judge's analysis was incorrect. Instead, defendant argues the parties engaged in ordinary domestic contretemps, and the

16

PDVA should not be used "to address the discord that comes when two people end a longstanding relationship." See Corrente, 281 N.J. Super. at 250. Defendant asserts the judge improvidently relied on answers to "leading questions" she posed to plaintiff and "two notes" plaintiff proffered. Defendant also claims the judge "interject[ed]" herself into the proceedings through these leading questions and failed to require a proper foundation for items she considered in issuing the FRO.

We are satisfied the judge considered plaintiff's testimony and items, viewed the context and content of the text messages, calls, and defendant's actions, all in light of the parties' history and properly determined he committed harassment.

Viewing the record in light of the applicable law, we discern no error in the judge's finding the predicate act of harassment. The judge's determination rested on substandard credible evidence that was properly authenticated and considered, although items were marked for identification but not moved into evidence.

Defendant is correct the judge did not specify which subpart of the harassment statute she relied upon. Nonetheless, having found "very credible" plaintiff's description of the allegations in the complaint, including the parties'

history, the judge deemed defendant's repeated text messages, notes left on plaintiff's car, and calls after being blocked and told not to contact her, constituted annoying and alarming behavior. Moreover, plaintiff credibly testified that defendant grabbed her by the arm, shook her, pushed her with a piece of furniture, shoved her, grabbed her by the hair, and dragged her throughout his house. All of these actions, which defendant does not address in his merits brief, satisfy subsections (a), (b), and (c) of the harassment statute. Thus, we perceive no basis to disturb the judge's finding plaintiff proved harassment by a preponderance of the evidence.

Defendant also argues the judge improperly found he committed the predicate act of harassment because there was no intent or purpose to harass proven. Defendant contends the judge failed to analyze intent and never mentioned the word "intent" in her decision.

As the J.D. Court stated, "[a]lthough a purpose to harass can be inferred from a history between the parties . . . that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." 207 N.J. at 487 (citation omitted). We have held that "purpose may and often must be inferred

A-4130-23

from what is said and done and the surrounding circumstances." State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006).

We are satisfied the record here shows defendant's intent to harass plaintiff. By way of example, defendant drove to plaintiff's place of employment to drop off a bag of her personal items when he simply could have driven to her house, which was closer to where he lives. In addition, defendant sent a text message containing a picture of the house of plaintiff's children's father. Defendant's actions were evaluated by the judge in light of the previous history of domestic violence between the parties. Cesare, 154 N.J. at 402. A "'finding of a purpose to harass may be inferred from the evidence presented,' and we have observed that '[c]ommon sense and experience may inform that determination.'" J.D., 207 N.J. at 477 (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 577 (1997)).

We are satisfied the judge considered the "very credible" testimony elicited from plaintiff during the hearing. As the judge concluded, defendant purposely committed acts of harassment based on the frequency and content of his repeated text messages, the photograph, notes, and presence at plaintiff's place of employment. Based on the assessment of plaintiff's testimony and the

nature of the parties' relationship, defendant's intent and purpose to harass plaintiff are implicated from the record presented.

Lastly, we reject defendant's claim that the judge improperly evaluated prong two of Silver. Here, the judge expressly analyzed Silver and made findings supported by the record. The judge explained defendant "doesn't stop" and plaintiff's concern "for her safety going forward" and the safety of her two children who live with her. Accordingly, we conclude there was credible evidence supporting the judge's finding that an FRO was necessary to protect plaintiff. See Silver, 387 N.J. Super. at 125-27.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-4130-23